(991 P.2d 911)

No. 82,397

STATE OF KANSAS, *Appellee,* v. HENRY L. HARTMAN, *Appellant.*

Opinion filed January 21, 2000.

*Michael S. Holland,* of Holland and Holland, of Russell, for appellant.

*Thomas J. Drees,* county attorney, *Gregory A. Schwartz,* legal intern, and *Carla J. Stovall,* attorney general, for appellee.

Before KNUDSON, P.J., ROGG, S.J., and MATTHEW J. DOWD, District Judge, assigned.

KNUDSON, J.: Henry Hartman appeals his conviction for driving while under the influence of alcohol (DUI), in violation of K.S.A. 1998 Supp. 8-1567(a)(2), arguing lack of a knowing and voluntary consent to take the breath test and sufficiency of the evidence because there was no testimony relating the test results to the alcohol concentration in his breath at the time of driving. We affirm after concluding Hartman's consent was knowingly and voluntarily given and the State met its burden to prove Hartman operated his vehicle with an alcohol concentration in his breath of .176 in violation of K.S.A. 1998 Supp. 8-1567(a)(2).

Sometime between 2:42 and 2:45 a.m. on December 2, 1995, Officer Dennis Dinkel arrested Hartman for driving under the influence of alcohol. Hartman initially refused to take a breath test,

indicating he believed a blood test would be more accurate. Hartman and Dinkel argued for a while over whether Hartman had the right to demand a blood test rather than a breath test. Eventually, the two agreed Hartman would submit to a breath test if Dinkel would transport Hartman to a nearby hospital for a blood test at Hartman's expense. Dinkel directed dispatch to call the hospital in advance—the record does not show whether the dispatch personnel did so.

Hartman registered .176 on the Intoxilyzer 5000 at 3:43 a.m. Dinkel drove Hartman to the hospital. Emergency personnel refused to administer a blood test without a doctor's consent, and Hartman was ultimately unable to obtain a test. Both Dinkel and Hartman testified they had expected the hospital to administer the test and were surprised when the hospital personnel refused—in fact, Hartman had obtained a similar blood test at the same hospital in the past. Hartman testified he would have refused to take the breath test had he known he would not receive the blood test.

Hartman moved to suppress the breath test results, arguing his consent was contingent upon Dinkel's "misrepresentations" that Hartman would receive a blood test. As a result, an alleged false promise by law enforcement rendered Hartman's consent involuntary and invalid.

Preliminarily, the State argues Hartman did not properly raise this issue to the trial court, barring our review. Upon review of the record, we find Hartman presented his argument to the trial court at the suppression hearing and lodged a contemporaneous objection at trial. Hartman properly preserved the issue, and we move to the merits.

Hartman urges us to invoke the exclusionary rule and declare the breath test inadmissible. Even if Hartman had suffered some sort of constitutional wrong, which we do not decide, he must show police misconduct caused the wrong before qualifying for application of the exclusionary rule. See *Arizona v. Evans*, 514 U.S. 1, 11, 131 L. Ed. 2d 34, 115 S. Ct. 1185 (1995). Where the exercise of the rule would not deter future police misconduct, use of the rule is not warranted. Therefore, we believe the core question in

this matter is whether the police improperly misled Hartman into believing he would receive a blood test.

The record establishes both Dinkel and Hartman reasonably expected the hospital to administer the test. Dinkel did not "misrepresent" anything—he did what he could to help Hartman obtain a test. There is no improper police conduct to punish here. The United States Supreme Court has stressed that the exclusionary rule does not apply where police, as part of a basis for probable cause to search, reasonably rely upon information that subsequently turns out to be incorrect. See, *e.g., Evans,* 514 U.S. at 15-16 (computer report erroneously showed outstanding arrest warrant); *Illinois v. Rodriguez,* 497 U.S. 177, 187, 111 L. Ed. 2d 148, 110 S. Ct. 2793 (1990) (police reasonably but mistakenly relied on third party for authority to enter residence). Finding a reasonable but mistaken belief here, shared by both the officer and the defendant, we uphold the trial court and reject Hartman's issue.

Hartman also claims the State failed to prove he possessed a blood alcohol level of greater than .08 at the time he was driving. Hartman contends the State's evidence only measured his blood alcohol concentration approximately 1 hour after he drove, not when he drove. Although Hartman couches this as a sufficiency of the evidence issue, we believe proper resolution first requires interpretation of K.S.A. 1998 Supp. 8-1567(a)(2). Thus, our standard of review is plenary. See *State v. Patterson,* 25 Kan. App. 2d 245, 247, 963 P.2d 436, *rev. denied* 265 Kan. 888 (1998).

K.S.A. 1998 Supp. 8-1567(a) states:

"(a) No person shall operate or attempt to operate any vehicle within this state while:

(1) The alcohol concentration in the person's blood or breath as shown by any competent evidence, including other competent evidence, as defined in paragraph (1) of subsection (f) of K.S.A. 8-1013, and amendments thereto, is .08 or more;

(2) *the alcohol concentration in the person's blood or breath, as measured within two hours of the time of operating or attempting to operate a vehicle,* is .08 or more;

(3) under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle;

(4) under the influence of any drug or combination of drugs to a degree that renders the person incapable of safely driving a vehicle; or

(5) under the influence of a combination of alcohol and any drug or drugs to a degree that renders the person incapable of safely driving a vehicle." (Emphasis added.)

The clear language of an earlier version of this statute, K.S.A. 1985 Supp. 8-1567(a)(1), was interpreted as making the fact of driving with a blood alcohol concentration of .10 a crime without any further showing being required. *State v. Zito*, 11 Kan. App. 2d 432, 434, 724 P.2d 149, *rev. denied* 240 Kan. 806 (1986). This form of proscription is commonly referred to as a per se violation because it is not material whether the driver was incapable of safely driving a vehicle.

The per se violation of our DUI law is now embodied in K.S.A. 1998 Supp. 8-1567(a)(2), and the State is not required to prove the driver was incapable of safely driving a vehicle. This brings us to the specific question raised by Hartman—is a test reading of .08 or more that is taken within 2 hours sufficient evidence to support a per se violation of the DUI statute? The answer is "yes."

Although not addressing the precise issue Hartman now raises, another panel of this court in *State v. Pendleton*, 18 Kan. App. 2d 179, 185, 849 P.2d 143 (1993), recognized that under 8-1567(a)(2), the State must show the test occurred within 2 hours of driving or attempting to drive. Additionally, there is a helpful discussion in *Pendleton* of 8-1567(a)(1) and blood or breath tests taken *outside* the 2-hour window of a per se violation.

The rule of strict construction of a criminal statute is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent. Further, various provisions of a statute should be construed together with a view of bringing them into harmony. *State v. Vega-Fuentes*, 264 Kan. 10, 14, 955 P.2d 1235, *rev. denied* 265 Kan. 889 (1998). Applying these rules of interpretation to proscribed conduct under K.S.A. 1998 Supp. 8-1567(a), we conclude legislative intent is clear and unambiguous. Under subparagraph (a)(1), the State may use tests measured outside the 2-hour window as competent evidence to prove the defendant drove or attempted to drive while his blood alcohol level was .08 or higher. Conversely, a per se violation under subparagraph (a)(2) requires a blood alcohol test result of .08 or

more as measured within 2 hours of driving or attempting to drive—no other evidence is required to establish a prima facie case. In other words, in a prosecution for a per se violation, the trier of fact may infer that the test result accurately measured the defendant's blood alcohol concentration at the time the defendant was last operating or attempting to operate a vehicle. Consequently, we conclude the State met its burden to establish a prima facie case and the alcohol concentration test result of .176 is sufficient to support the jury's verdict.

Hartman does contend the evidence is insufficient to support his conviction based upon his expert's testimony that a single test result is not scientifically reliable. This appears to raise a question of law as to the scientific validity of the State's single test rather than a sufficiency of the evidence issue. In any event, we note K.S.A. 1998 Supp. 8-1001 does not require more than one test. Additionally, the jury was free to accept or reject the testimony of Hartman's expert that a single test is not scientifically reliable. We conclude Hartman's sufficiency of the evidence argument is without merit.

Affirmed.