(138 P.3d 784)
No. 93,897

JAMES LEFFEL, *Appellant,* v. KANSAS DEPARTMENT OF REVENUE, *Appellee.*

Opinion filed July 21, 2006.

*Michael S. Holland II* and *Michael S. Holland,* of Holland and Holland, of Russell, for appellant.

*Ted E. Smith*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before MALONE, P.J., GREEN, J., and BUKATY, S.J.

GREEN, J.: James Leffel appeals from the trial court's decision affirming the suspension of his driver's license by the Kansas Department of Revenue (KDR). Leffel argues that the trial court erred in considering preliminary breath test results from a device not approved by the Kansas Department of Health and Environment (KDHE). We determine that because there was no evidence in the record establishing that the preliminary breath testing device had been approved by the KDHE, the preliminary breath test result could not be used when determining whether probable cause existed to arrest Leffel. Nevertheless, the remaining evidence presented to the trial court provided sufficient evidence to support its finding that the officer had probable cause to arrest Leffel for driving under the influence of alcohol. Therefore, the trial court's decision affirming the suspension of Leffel's driver's license was proper. Accordingly, we affirm.

Shortly after 1 a.m. on February 22, 2002, Officer Scott Carlton stopped Leffel after he saw Leffel's car cross the centerline and then straddle the centerline for approximately one and a half blocks. Upon approaching Leffel, Carlton smelled a strong odor of alcohol. Moreover, Carlton noticed that Leffel's eyes were red and that his speech was slurred. When Carlton asked Leffel if he had been drinking, Leffel responded that "he had a couple."

Leffel underwent field sobriety testing. During one of the tests, Carlton asked Leffel to recite the alphabet. Leffel recited the alphabet to "o" the first time. Leffel was unable to finish reciting the alphabet. Carlton also asked Leffel to perform the one-leg stand test. Leffel told Carlton that one of his legs was disabled. Leffel agreed to try the test using his good leg. Leffel put his foot down several times during the test. Carlton stopped the test for Leffel's safety.

After the attempted field sobriety tests, Leffel agreed to take a preliminary breath test which was conducted on the Alco-sensor IV. Leffel's results from the preliminary breath test results showed

that his breath alcohol level was above the legal limit of .08. Carlton arrested Leffel for driving under the influence of alcohol. After an administrative hearing was conducted, the KDR suspended Leffel's driver's license under K.S.A. 8-259.

Leffel appealed the suspension of his driver's license to the trial court. The trial court held a hearing at which both Leffel and Carlton testified. The only argument raised by Leffel at the hearing was that Carlton lacked probable cause to arrest him. Leffel testified that when Carlton stopped him, he had not been drinking alcoholic beverages for approximately 2 hours. Leffel testified that he had not driven left of the centerline before Carlton stopped him. Moreover, Leffel testified that he had not been drinking enough to exhibit slurred speech. Leffel indicated that he was unable to complete the one-leg stand test because he could not maintain his balance due to an injury to his leg and hips. According to Leffel, he explained to the officer that he had broken his right leg in 13 places and could barely walk. Leffel acknowledged that he recited the alphabet to only "o" but indicated that he had not recited the alphabet in 30 years.

In a written memorandum decision, the trial court affirmed the suspension of Leffel's driver's license, finding that Carlton had probable cause to arrest Leffel for driving under the influence of alcohol. In addition, the trial court found that "the Alco-sensor is an approved device for determining probable cause to arrest and grounds for requiring testing pursuant to K.S.A. 8-1001."

*Standard of Review*

In reviewing the trial court's ruling in this driver's license suspension case, we apply a substantial competent evidence standard. See *Schoen v. Kansas Dept. of Revenue*, 31 Kan. App. 2d 820, 822, 74 P.3d 588 (2003). "Substantial evidence is that which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. [Citation omitted.]" *U.S.D. No. 233 v. Kansas Ass'n of American Educators*, 275 Kan. 313, 318, 64 P.3d 372 (2003).

*Preliminary Breath Test*

On appeal, Leffel first argues that the trial court erred in considering the preliminary breath test results that were obtained on the Alco-sensor IV, a device not approved for use by the KDHE. Leffel's argument requires interpretation of the statutes pertaining to preliminary breath testing. Interpretation of a statute is question of law over which an appellate court's review is unlimited. An appellate court is not bound by the trial court's interpretation of a statute. *Cooper v. Werholtz*, 277 Kan. 250, 252, 83 P.3d 1212 (2004).

K.S.A. 65-1,107(d) authorizes the Secretary of Health and Environment to adopt rules and regulations establishing the criteria for preliminary breath testing devices for law enforcement purposes. In addition, K.S.A. 65-1,107(e) authorizes the Secretary of Health and Environment to adopt rules and regulations establishing a list of approved preliminary breath testing devices for law enforcement purposes "which law enforcement agencies may purchase and train officers to use as aids in determining probable cause to arrest and grounds for requiring testing" under K.S.A. 8-1001.

The KDHE has established the criteria for approval of preliminary breath testing devices in K.A.R. 28-32-6. Moreover, the KDHE has established the procedure for gaining approval of preliminary breath testing devices and a list of approved preliminary breath testing devices in K.A.R. 28-32-7(a) as follows:

"Preliminary breath test devices shall be submitted to the Kansas department of health and environment for evaluation and approval for law enforcement purposes. The devices shall be operated according to the manufacturers' written directions and shall meet the criteria prescribed in K.A.R. 28-32-6. Devices are as follows:

"(1) Alcometer S-D2

"(2) Alco-sensor

"(3) Alco-sensor III

"(4) Alco-sensor, pass-warn-fail

"(5) Alcotest

*and any other devices that upon evaluation by the department of health and environment meet the stated criteria in K.A.R. 28-32-6.*" (Emphasis added.)

Although the Alco-sensor and the Alco-sensor III are listed as preliminary breath testing devices under K.A.R. 28-32-7(a), the Alco-sensor IV is not specifically listed under this regulation. Moreover, there was no evidence presented to the trial court that the Alco-sensor IV had been evaluated by the KDHE and had met the criteria of K.A.R. 28-32-6.

It is clear under K.S.A. 65-1,107 that the legislature intended to provide the KDHE with the authority to adopt rules and regulations establishing the criteria for preliminary breath testing devices and to develop a list of approved preliminary breath testing devices. Leffel points to K.S.A. 65-1,109 in which the legislature made it a crime to test human breath for law enforcement purposes unless the testing device was approved by the Secretary of Health and Environment. K.S.A. 65-1,109 states in relevant part:

"(a) It shall be unlawful for any person to make any test of the human breath for law enforcement purposes, unless:

. . . .

(2) the apparatus, equipment or device used by such person in the testing of human breath for law enforcement purposes is of a type approved by the secretary of health and environment and otherwise complies with the rules and regulations of the secretary of health and environment adopted pursuant to K.S.A. 65-1,107 and amendments thereto to govern the periodic inspection of such apparatus, equipment and devices.

"(b) Any person who violates any provision of subsection (a) shall be guilty of a class C misdemeanor.

"(c) Nothing in this section shall be construed to prohibit the use of devices *approved pursuant to K.S.A. 65-1,107* and amendments thereto for law enforcement purposes." (Emphasis added.)

This statute evidences the legislature's intent that a preliminary breath testing device must be approved under K.S.A. 65-1,107 by the KDHE before it can be used for law enforcement purposes.

Here, the State failed to show that Leffel's preliminary breath test was conducted on a device approved by the KDHE. Because the Alco-sensor IV was not listed as an approved device under K.A.R. 28-32-7(a), the State needed to bring forward some form of evidence showing that the Alco-sensor IV had been evaluated by the KDHE and had met the criteria in K.A.R. 28-32-6.

The State attaches to its brief on appeal an affidavit from the KDHE's custodian of records pertaining to the certification of instruments used for breath testing in Kansas and two documents that the records custodian states are on file with the KDHE. The first document is entitled "List of Approved Preliminary Breath Test Devices" and is dated January 1, 1993. The second document is entitled "Current List of Approved PBT's" and is dated July 1, 2003. Both of these documents list the Alco-sensor IV. Nevertheless, neither the affidavit nor the two documents are contained within the record on appeal. "Material which is annexed to an appellate brief by way of an appendix is not a substitute for the record itself and cannot be considered on appeal. [Citations omitted.]" *In re Gershater*, 270 Kan. 620, 633, 17 P.3d 929 (2001); see Kansas Supreme Court Rule 6.02(f) (2005 Kan. Ct. R. Annot. 36) (An appendix attached to an appellate brief is not a substitute for the record itself.).

Citing *State v. Witte*, 251 Kan. 313, 836 P.2d 1110 (1992), the State requests that this court take judicial notice of the KDHE documents attached to its brief. In *Witte*, our Supreme Court, when discussing the admissibility of the horizontal gaze nystagmus test, referenced several studies done by the National Highway Traffic Safety Administration (NHTSA). These studies were found in 2 Nichols, Drinking/Driving Litigation § 26 app. A-C (1991). 251 Kan. at 315-16. Different from the NHTSA studies discussed in *Witte*, the documents provided by the State do not appear to be in any readily accessible treatise. Moreover, the State fails to show us that these documents are in a readily accessible published form. Instead, these documents appear to be internal documents of the KDHE. K.S.A. 60-412(c) allows this court to take judicial notice of any matter specified in K.S.A. 60-409. Nevertheless, these documents do not apparently fall within K.S.A. 60-409. Therefore, we are unable to accept the State's invitation to take judicial notice of the documents attached to its brief.

We determine that Leffel's preliminary breath test result did not constitute substantial competent evidence to support the trial court's decision that Carlton had probable cause to arrest Leffel.

## Probable Cause to Arrest

Nevertheless, the KDR argues that even if the trial court erroneously admitted Leffel's preliminary breath test results, there was sufficient evidence to support the trial court's finding that Carlton had probable cause to arrest Leffel. On the other hand, Leffel contends that the trial court based its decision on all of the evidence presented, including the preliminary breath test results, and did not make any specific findings concerning the disputed and contradictory evidence presented. Therefore, Leffel maintains that his case should be remanded to the trial court for specific findings of fact on this issue.

Leffel's argument ignores the fact that the trial court, when determining that Carlton had probable cause to arrest Leffel for driving under the influence of alcohol, specifically adopted Carlton's testimony. In its memorandum opinion, the trial court stated:

"The Court specifically adopts the testimony of Officer Carlton and the record attached to the Answer of the Defendant as if fully set forth herein and made a part hereof. Officer Carlton had probable cause to arrest the plaintiff for DUI. [Citations omitted.]"

Thus, the trial court resolved the contradictions between Carlton's and Leffel's testimony by adopting Carlton's testimony. As the factfinder in this case, the trial court's function was to resolve conflicting evidence. See *State v. Timms*, 29 Kan. App. 2d 770, 775, 31 P.3d 323 (2001) ("It is the function of the factfinder at trial to determine the weight and credibility of witnesses.").

In arguing that there was sufficient evidence to support the trial court's decision, the States cites *Campbell v. Kansas Dept. of Revenue*, 25 Kan. App. 2d 430, 962 P.2d 1150, *rev. denied* 266 Kan. 1107 (1998). There, an officer approached Campbell after he had seen Campbell driving 72 miles per hour in a 55 miles per hour zone at approximately 1:10 a.m. When the officer approached Campbell, he smelled alcohol on Campbell's breath and noticed that Campbell's eyes were glazed and bloodshot. Campbell admitted to having a few drinks. Apparently, Campbell eventually underwent field sobriety testing and was arrested. On appeal, Campbell argued that the arresting officer did not have probable cause

to believe that he had been driving under the influence of alcohol when the officer asked him to perform field sobriety tests. This court rejected Campbell's argument, determining that the officer's observations immediately after he contacted Campbell "were more than sufficient to satisfy a reasonably prudent police officer that Campbell had been driving under the influence." 25 Kan. App. 2d at 432. This court upheld the trial court's ruling that the officer had probable cause to arrest Campbell before administering the field sobriety tests. 25 Kan. App. 2d at 431-32.

Here, there was even more evidence than in *Campbell* to support the trial court's decision that Carlton had probable cause to believe that Leffel was driving under the influence of alcohol. At the hearing, Officer Carlton testified that just before stopping Leffel, Carlton saw Leffel's car cross and then straddle the centerline for approximately one and a half blocks. Carlton testified that in his past training and experience, drivers under the influence of alcohol "do cross the center line and stay middle, focusing on the line to make sure they go down the road safely, not hit any other cars so they rely on the center line to—to take them down the road." Upon making contact with Leffel, Carlton smelled alcohol and noticed that Leffel's eyes were red and that his speech was slurred. Leffel admitted that he had a few drinks. Leffel agreed to attempt the field sobriety tests but was unable to complete the tests. Although Leffel explained that he was unable to complete the one-leg stand test because he suffered from a disability which affected his ability to balance, Leffel provided no legitimate reason as to why he could not completely recite the alphabet.

After reviewing the hearing transcript, we determine that Carlton's testimony provided more than sufficient evidence to establish that he had probable cause to believe that Leffel had been driving under the influence of alcohol. We determine that there was substantial competent evidence to support the trial court's decision affirming the suspension of Leffel's driver's license.

Affirmed.