(204 P.3d 630)
No. 93,947

STATE OF KANSAS, *Appellee,* v. LEONARD POLLMAN, *Appellant.*

Opinion filed November 21, 2008.

*Sam S. Kepfield,* of Hutchinson, for appellant.

*Gary L. Price, Jr.,* and *David A. Page,* assistant county attorneys, *Ty Kaufman,* county attorney, and *Phill Kline* and *Paul J. Morrison,* former attorneys general, for appellee.

Before MALONE, P.J., GREEN and BUSER, JJ.

BUSER, J.: This case returns to our court upon remand from the Supreme Court. See *State v. Pollman,* 286 Kan. 881, 190 P.3d 234 (2008). After consideration of the remanded questions, we again reverse Leonard Pollman's conviction of driving under the influence of alcohol (DUI) and vacate his sentence.

## Factual and Procedural Background

Leonard Pollman was convicted of DUI in violation of K.S.A. 2005 Supp. 8-1567(a)(2). On appeal, Pollman contended the district court erred in overruling his motion to suppress evidence obtained by Officer Michael Walline because the officer did not have reasonable suspicion to detain him or probable cause to arrest him for DUI. Pollman also contended that K.S.A. 2005 Supp. 8-1567(a)(2) was unconstitutionally overbroad and void for vagueness.

In *State v. Pollman,* No. 93,947, unpublished opinion filed April 27, 2007, we reversed the conviction, stating: "Our review of the evidence in the present case convinces us that at the time Walline commenced his investigative detention of Pollman the totality of circumstances would not have provided an objective law enforcement officer with a reasonable suspicion that Pollman had committed a DUI." Slip op. at 11. Given our ruling we declined to address the additional issues raised by Pollman on appeal. Slip op. at 12.

The Supreme Court granted the State's petition for review and reversed our decision holding:

"[W]e conclude the totality of the circumstances—including criminal obstruction of official duty, admission to drinking, and smell of alcohol—provided reasonable suspicion sufficient to justify an investigation into whether Pollman, who was observed driving, was operating his motorcycle while under the influence of alcohol. In other words, there existed a minimum level of objective justification sufficient for the investigative detention of Pollman." 286 Kan. at 897.

Given its decision, the Supreme Court remanded the case to our court to "address the questions of whether K.S.A. 2005 Supp. 8-1567(a)(2) is unconstitutionally overbroad and void for vagueness and whether the arrest was supported by probable cause." 286 Kan. at 897.

Because the determination of whether probable cause existed to arrest Pollman for DUI turns on the totality of circumstances known to Officer Walline at the time of the arrest, we reprise the Supreme Court's recitation of the facts:

"On the evening of June 26, 2004, Leonard Pollman (Pollman) and his wife Vida Pollman (Vida) were traveling together in McPherson, Kansas, each driving a motorcycle. Officer Michael Walline observed the couple for about 10 blocks. During that time, the only traffic violation the officer saw was Vida's failure to use a turn signal on her motorcycle. As a result, Officer Walline stopped Vida. Pollman also pulled over. Although Walline informed Pollman that he was not being stopped and needed to 'move along,' Pollman lingered. At one point, Walline told Pollman that if he wanted to stay in the area, he should take his motorcycle to a nearby parking lot. Instead, Pollman stood next to his motorcycle after parking it about one car length ahead of Vida's.

"While asking Vida for her identification during the traffic stop, Officer Walline smelled an odor of alcohol on her breath, which prompted him to conduct a DUI investigation on Vida. A reserve officer was present with Officer Walline, and because Walline did not want Pollman to obstruct his wife's traffic stop, Walline asked the reserve officer to have Pollman step away. After Pollman refused to leave the vicinity of the traffic stop, Officer Walline called for back-up assistance. Walline's superior, Captain Allcock, arrived and stood with Pollman.

"According to Allcock's testimony at the suppression hearing, he smelled alcohol on Pollman's breath. When asked, Pollman admitted to Allcock that he had been drinking. Allcock did not know how much alcohol Pollman had consumed or how long ago the drinking had occurred, but he observed Pollman to be coherent and cooperative. Other than the odor of alcohol, Allcock saw no other typical indicators signaling that Pollman had been drinking.

"Meanwhile, Officer Walline was conducting Vida's traffic stop. Although he smelled an odor of alcohol on Vida's breath, Walline ultimately determined that

she did not qualify for a DUI arrest. After issuing a warning about the traffic infraction, Walline told Vida she was free to go.

"After that, Officer Walline walked with Vida to her motorcycle and made contact with Pollman, who was still standing with Captain Allcock. According to Walline's suppression hearing testimony, he spoke to Pollman because 'I had already talked to him about getting away from my traffic stop and I wanted to speak with him about obstruction and future charges if he were ever in that situation again.'

"Officer Walline asked Pollman for his driver's license, and Pollman handed it over. Walline was planning to talk to Pollman about his behavior as it related to his wife's traffic stop when Captain Allcock told Walline something like, 'He's been drinking, you need to check him.' Then Allcock had to leave the scene on other police business. When Walline asked Pollman if he had consumed any alcohol, Pollman replied that he had consumed 'a few' beers.

"Officer Walline asked Pollman to get in the patrol car. At that point, for the first time, Walline smelled an odor of alcohol on Pollman's breath. After that, Walline administered a preliminary breath test (PBT) which registered a breath alcohol concentration of .11. Walline also conducted field sobriety tests, including the walk-and-turn test and the one-legged-stand test. He was dissatisfied with Pollman's performance on both of these tests. Walline arrested Pollman, gave him a copy of the implied consent advisory form, and read it to him. In addition, Pollman consented to a blood test which revealed a blood alcohol concentration (BAC) of .10." 286 Kan. at 882-84.

### Probable Cause to Arrest Pollman for DUI

Pollman contends the district court erred in overruling his motion to suppress evidence because Officer Walline did not have probable cause to arrest him for DUI. In particular, Pollman argues the State failed to establish a sufficient foundation for admission of the preliminary breath test (PBT) result which comprised part of the totality of circumstances establishing probable cause to arrest Pollman for DUI.

On review of a district court's suppression of evidence, this court considers whether the factual findings are supported by substantial competent evidence. The ultimate legal conclusion, however, is reviewed de novo. *State v. Ackward*, 281 Kan. 2, 8, 128 P.3d 382 (2006). The State bears the burden of proof on a suppression issue; it must prove the lawfulness of the search and seizure to the court. *State v. Porting*, 281 Kan. 320, 324, 130 P.3d 1173 (2006). This court will not reweigh evidence, determine witnesses' credibility, or resolve conflicts in evidence. *Ackward*, 281 Kan. at 8. Finally,

the admission or exclusion of evidence, subject to exclusionary rules, is within the district court's discretion. *State v. Bishop*, 264 Kan. 717, 725, 957 P.2d 369 (1998).

At the hearing on Pollman's motion to suppress evidence, the State presented the testimony of Walline and Allcock regarding their encounter with Pollman prior to his arrest. In addition to this testimony, the State sought to offer the incriminating evidence of the .11 test result from the PBT administered by Walline to Pollman.

Pollman's counsel contemporaneously objected to admission of the PBT result:

"I'm going to object, Your Honor, based upon foundation. We don't have any showing of what unit is being used here. We don't have any showing as to whether a waiting period is in fact required and if there is, no foundation for the admission of this PBT. We don't know how reliable it is and whether the instructions were followed."

After a colloquy with defense counsel, the district judge advised the prosecutor, "You're going to have to show me more foundation as to what was done on the preliminary breath test."

The prosecutor then elicited the following testimony from Officer Walline:

"Q. Okay. Did you, what type of machine do you use for your preliminary breath test?
"A. It's a digital preliminary breath test, PBT. I, I don't know what else to say about it.
"Q. Do you know the manufacturer name?
"A. Not right offhand. I believe it's possibly CMI is the company name I believe, but I'm not sure right offhand."

Pollman's counsel renewed his objection:

"Well, I'm going to object again. Your Honor, because the Department, KAR 28, the KAR require that there are four types of preliminary breath tests which are admissible into evidence and there are others which can be if there is a showing of reliability. That has not been done here. We don't know what type of testing we're using."

The prosecutor continued his examination, establishing that although Officer Walline had some on-the-job training on the PBT from the police department and had read the user's manual, no

certification was required to operate it. Officer Walline also testified that because he had used the PBT numerous times he did not read the operating instructions on the PBT itself, which "state basically what to do; have the subject blow into it, which buttons to push on it to make it operate."

.Pollman's counsel objected a third time to admission of the PBT test result: "Again, Your Honor, I'm going to object. There is no foundation as to whether this machine in fact is approved by the Kansas Department of Health and Environment. Therefore, I think absent that, any results obtained from it are inadmissible."

The trial judge overruled the objection:

"Well, I don't agree with you, Mr. Kepfield. Bottom line is if he was being tried today for refusing preliminary breath test or along those lines you might have a good argument but we're not trying him today. This is a motion to suppress and the issue is probable cause for doing what he was doing. I'm going to allow it."

On appeal, Pollman argues the State failed to establish the requisite foundation for the admissibility of the PBT test. Additionally, Pollman contends that absent the admission of the PBT test result, which under K.S.A. 8-1001(b) resulted in the blood alcohol test that yielded incriminating evidence of Pollman's intoxication, there was no probable cause to arrest him for DUI.

The State counters that "there is no case precedent or statute stating the elements of a proper foundation for the admission of the preliminary breath test results." The State concedes, however, there are specific foundational requirements under K.S.A. 8-1001 that must be established prior to admission of an alcohol test result *at trial*. See *Bishop*, 264 Kan. at 725-28. In summary, the State argues:

"As opposed to a breath test given pursuant to K.S.A. 8-1001, which results are admissible at trial and weigh heavily on establishing the guilt of a defendant, results from a preliminary breath test do not impact on a defendant's guilt or innocence, cannot be admissible at trial and when admissible during preliminary hearings, are for the very limited purpose of 'aiding the court or hearing officer' in making a determination as to the validity of an arrest. It is the State's position that any foundation required to admit such results, during a preliminary hearing and or a hearing on a motion to suppress, is entirely at the discretion of the judge or hearing officer and should not rise to the same level as that of a test pursuant to K.S.A. 8-1001."

Our court has addressed this very issue in the context of a driver's license suspension ordered by the Kansas Department of Revenue (KDR). See *Leffel v. Kansas Dept. of Revenue*, 36 Kan. App. 2d 244, 138 P.3d 784 (2006). Leffel's driver's license was suspended by the KDR following his arrest for DUI. Leffel appealed to the district court claiming there was insufficient probable cause to believe he was intoxicated because there was not a sufficient foundation for admission of the incriminating PBT result. In particular, Leffel argued the district court erred in considering the PBT result because the testing device was an Alco-sensor IV, a device not approved for use by the Kansas Department of Health and Environment (KDHE).

Our court provided the following analysis regarding what foundation must be established prior to admission of PBT results:

"K.S.A. 65-1,107(d) authorizes the Secretary of Health and Environment to adopt rules and regulations establishing the criteria for preliminary breath testing devices for law enforcement purposes. In addition, K.S.A. 65-1,107(e) authorizes the Secretary of Health and Environment to adopt rules and regulations establishing a list of approved preliminary breath testing devices for law enforcement purposes 'which law enforcement agencies may purchase and train officers to use as aids in determining probable cause to arrest and grounds for requiring testing' under K.S.A. 8-1001.

"The KDHE has established the criteria for approval of preliminary breath testing devices in K.A.R. 28-32-6. Moreover, the KDHE has established the procedure for gaining approval of preliminary breath testing devices and a list of approved preliminary breath testing devices in K.A.R. 28-32-7(a) as follows:

"Preliminary breath test devices shall be submitted to the Kansas department of health and environment for evaluation and approval for law enforcement purposes. The devices shall be operated according to the manufacturers' written directions and shall meet the criteria prescribed in K.A.R. 28-32-6. Devices are as follows:

" '(1) Alcometer S-D2
" '(2) Alco-sensor
" '(3) Alco-sensor III
" '(4) Alco-sensor, pass-warn-fail
" '(5) Alcotest
*and any other devices that upon evaluation by the department of health and environment meet the stated criteria in K.A.R. 28-32-6.'*

Although the Alco-sensor and the Alco-sensor III are listed as preliminary breath testing devices under K.A.R. 28-32-7(a), the Alco-sensor IV is not specifically

listed under this regulation. Moreover, there was no evidence presented to the trial court that the Alco-sensor IV had been evaluated by the KDHE and had met the criteria of K.A.R. 28-32-6.

"It is clear under K.S.A. 65-1,107 that the legislature intended to provide the KDHE with the authority to adopt rules and regulations establishing the criteria for preliminary breath testing devices and to develop a list of approved preliminary breath testing devices. Leffel points to K.S.A. 65-1,109 in which the legislature made it a crime to test human breath for law enforcement purposes unless the testing device was approved by the Secretary of Health and Environment. K.S.A. 65-1,109 states in relevant part:

" '(a) It shall be unlawful for any person to make any test of the human breath for law enforcement purposes, unless:

. . . .

(2) the apparatus, equipment or device used by such person in the testing of human breath for law enforcement purposes is of a type approved by the secretary of health and environment and otherwise complies with the rules and regulations of the secretary of health and environment adopted pursuant to K.S.A. 65-1,107 and amendments thereto to govern the periodic inspection of such apparatus, equipment and devices.

" '(b) Any person who violates any provision of subsection (a) shall be guilty of a class C misdemeanor.

" '(c) Nothing in this section shall be construed to prohibit the use of devices *approved pursuant to K.S.A. 65-1,107* and amendments thereto for law enforcement purposes.'

This statute evidences the legislature's intent that a preliminary breath testing device must be approved under K.S.A. 65-1,107 by the KDHE before it can be used for law enforcement purposes.

"Here, the State failed to show that Leffel's preliminary breath test was conducted on a device approved by the KDHE. Because the Alco-sensor IV was not listed as an approved device under K.A.R. 28-32-7(a), the State needed to present some evidence showing the Alco-sensor IV had been evaluated by the KDHE and had met the criteria in K.A.R. 28-32-6." *Leffel*, 36 Kan. App. 2d at 247-48.

In the present case, the State established that the PBT device was digital and possibly manufactured by CMI—although Officer Walline conceded, "I'm not sure right offhand." As described, this device was not listed in K.A.R. 28-32-7(a) as an approved device for law enforcement purposes at the time of its use in this case. But see K.A.R. 28-32-14, effective March 14, 2008, 27 Kan. Reg. 249-50 (2008), which now lists numerous PBT models, including the Alco-Sensor IV Digital, as approved devices (the regulations have been substantially amended). Moreover, the State made no

showing that, although not specifically listed, this PBT device had been evaluated by the KDHE and met the criteria in K.A.R. 28-32-6 at the time of its use in this case.

We disagree with the State's claim that any foundation for admission of PBT results should be simply a matter for the unfettered discretion of district courts. Officer Walline's determination that probable cause existed to believe that Pollman was driving under the influence of alcohol led to his arrest for DUI and also may have impacted his driving privileges in the state. The important consequences of a probable cause determination in courts and administrative hearings are undoubtedly why the legislature authorized the KDHE to adopt rules and regulations regarding PBT devices when used "for law enforcement purposes" under K.S.A. 65-1,107(d). See K.S.A. 2007 Supp. 65-1,107(e); 27 Kan. Reg. 247-50 (2008) (new breath testing regulations).

In overruling Pollman's motion to suppress, the district court emphasized the importance of the PBT result. After summarizing the on-scene observations of Walline and Allcock and Pollman's admission to drinking, the district court concluded, "The request for preliminary breath test is made; he agreed to it, he took it, and tested point one one. That's above the legal limit. It's grounds for arrest for [DUI]."

As our court has observed, "[a] PBT is an important tool for law enforcement officers to determine whether an arrest should be made in order to protect the health and safety of citizens." *State v. Chacon-Bringuez*, 28 Kan. App. 2d 625, 631, 18 P.3d 970, *rev. denied* 271 Kan. 1038 (2001). A PBT result is so important, in fact, the legislature has determined that "[a] law enforcement officer may arrest a person based in whole or in part upon the results of a [PBT]." K.S.A. 2005 Supp. 8-1012(d). To adopt the State's view, however, is to countenance a law enforcement officer using an unapproved PBT device that may produce incriminating but unreliable results leading to a driver's arrest for serious traffic offenses and the imposition of administrative driving sanctions. Simply put, the State's view is at variance with K.S.A. 65-1,107(d) and K.A.R. 28-32-7(a).

As a result, we conclude (as did our court in *Leffel*) that "[b]ecause the State in this case failed to offer evidence at the trial court level that the defendant's preliminary breath test was conducted on a device approved by the [KDHE], the defendant's preliminary breath test result was not admissible evidence." 36 Kan. App. 2d 244, Syl. ¶ 5.

Our holding that the district court erred in its admission of the PBT result, however, does not end our review. We next consider whether, setting aside the incriminating PBT result, there still existed probable cause to believe Pollman was driving under the influence.

Preliminarily, we note that although Officer Walline testified at trial that Pollman failed one of four field sobriety tests, inexplicably the State presented no evidence regarding these tests at the hearing on the motion to suppress. This failure was noticed by the trial judge:

"Well, I suspicion that there were sobriety tests administered at the scene before he was arrested and I guess evidence would have been presented to show me what those sobriety tests result were we wouldn't be facing what we're facing with the . . . [PBT] because then the [PBT] is just incidental with that."

As a consequence, in our reassessment of the totality of circumstances which undergird the district court's probable cause finding, we also will not consider what, if any, effect the field sobriety test results had in the district court's finding of probable cause for arrest.

Review of the district court's determination of whether an officer had probable cause to make a warrantless DUI arrest is a mixed question of law and fact. *City of Dodge City v. Norton*, 262 Kan. 199, 203, 936 P.2d 1356 (1997). "In a DUI case, the answer to the probable cause to arrest question will depend on the officer's factual basis for concluding that the defendant was intoxicated at the time of arrest." 262 Kan. at 203.

Probable cause is a quantum of evidence which leads a prudent person to believe an offense was committed. *State v. Dunn*, 233 Kan. 411, 414, 662 P.2d 1286 (1983). There must be evidence to show that guilt is more than a possibility but less than that sufficient to prove guilt beyond a reasonable doubt. 233 Kan. at 414-15.

In our assessment of whether Officer Walline had probable cause to arrest Pollman for DUI, we consider the three factors highlighted by our Supreme Court in its determination that reasonable suspicion existed to detain Pollman for investigation of DUI. Of course, "[r]easonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than a preponderance of the evidence." *Pollman*, 286 Kan. 881, Syl. ¶ 6.

While the probable cause standard is greater than reasonable suspicion, the following factors identified by our Supreme Court are very relevant to the probable cause analysis. First, Pollman's refusal to follow lawful requests to leave the area of his wife's traffic stop may have indicated "impaired judgment because of intoxication"; second, "Pollman admitted he had consumed a few beers"; third, "Officer Walline smelled the odor of alcohol on Pollman's breath, which occurred after Walline had observed Pollman driving his motorcycle." 286 Kan. at 894-95.

These three factors, supported by evidence presented at the suppression hearing, comprised the totality of circumstances we may consider in our determination of whether the district court erred in finding that Officer Walline had probable cause to arrest Pollman for DUI.

These three factors are similar to the circumstances our court considered in *City of Norton v. Wonderly*, 38 Kan. App. 2d 797, 172 P.3d 1205 (2007), *rev. denied* 286 Kan. 1176 (2008). In *Wonderly,* a police dispatcher was called by a motorist and his passenger to report a pickup truck that was "swerving, spinning its tires and traveling at a high rate of speed." 38 Kan. App. 2d at 799. Based upon a vehicle description which included a license plate number, Officer Pat Morel located the vehicle and followed it for 3 minutes (about 3/4 of a mile) without observing any traffic violations. The officer activated his emergency lights and the driver, Joshua Wonderly, stopped at the side of the road. Wonderly exited his vehicle and approached the officer, who yelled at him to return to his vehicle. Wonderly continued to walk toward the officer; however, Wonderly returned to his truck after Officer Morel yelled at him again.

Upon contacting Wonderly and his passengers, Officer Morel smelled an odor of alcohol coming from the truck. He also noticed that Wonderly had bloodshot eyes. Wonderly cooperated by producing his driver's license, and he walked normally back to the officer's car. Once seated in the patrol car, Officer Morel noticed alcohol on Wonderly's breath. Upon inquiry, Wonderly admitted to having "some drinks at a local bar earlier that evening and one or two drinks at a bar in Lenora, Kansas." 38 Kan. App. 2d at 800. Officer Morel described Wonderly's speech as " 'fair' " but " 'not particularly slurred.' " 38 Kan. App. 2d at 800.

For reasons not relevant to the present case, the district court suppressed the incriminating result of the PBT administered to Wonderly. Our court, on appeal, also determined that Wonderly's inconsistent performance on field sobriety tests should not be considered in the review of whether probable cause existed to arrest Wonderly for DUI. As summarized by our court,

"[t]hus, prior to Wonderly's arrest, the admissible evidence showed that Wonderly initially disobeyed an order to get back into his truck, he had bloodshot eyes, the smell of alcohol was on his breath, and he admitted to drinking earlier that evening. Additionally, [Officer] Morel knew that a motorist had called law enforcement earlier that night and accused Wonderly of driving his truck in a reckless manner." 38 Kan. App. 2d at 808.

Our court concluded that Officer Morel had arrested Wonderly without probable cause and, as a result, suppressed the incriminating evidence and reversed Wonderly's conviction. 38 Kan. App. 2d at 809. In particular, our court noted that Officer Morel had not personally observed any traffic infractions and Wonderly's physical movements and speech did not suggest intoxication. Additionally, it was noted that Officer Morel apparently did not consider his observations of Wonderly and the admission to drinking sufficient indicators of intoxication because Officer Morel also conducted field sobriety tests and a PBT test. 38 Kan. App. 2d at 808-09.

In the present case, as in *Wonderly*, we consider the odor of alcohol on the driver's breath and his admission to drinking a few beers as evidence relevant to the probable cause inquiry. Similar to *Wonderly*, Pollman's unwillingness to follow the officer's direc-

tives may also have indicated a lapse of judgment induced by alcohol consumption. As in *Wonderly*, no testimony was presented in this case that the officer's subsequent investigation clarified why the driver disregarded the officer's orders. Absent such testimony, we are reluctant to place much weight on this factor, given the other possibility that since Pollman was traveling with his wife (who was being investigated for DUI), he may have stood nearby to witness the proceedings and protect her interests. Similar to *Wonderly*, in the present case the officer observed the driver for a short time without observing any erratic or illegal driving. Unlike *Wonderly*, there was no hearsay evidence of unsafe driving. Moreover, the present case contrasts with *Wonderly* because there was no evidence of bloodshot eyes and only "fair" speech. Here, Pollman did not exhibit any of the usual physical manifestations of intoxication.

In summary, we hold the totality of circumstances in the present case did not warrant a reasonably prudent police officer to believe that guilt was more than a mere possibility. See *Norton*, 262 Kan. at 203-04. Accordingly, because the officer did not have probable cause to arrest Pollman for DUI, the district court erred in not suppressing the incriminating evidence of the blood alcohol test. Moreover, given that the blood alcohol test result was essential to a conviction under K.S.A. 2005 Supp. 8-1567(a)(2),(f), we reverse Pollman's conviction and vacate his sentence.

*Constitutionality of K.S.A. 2005 Supp. 8-1567(a)(2)*

Pollman challenges K.S.A. 2005 Supp. 8-1567(a)(2) on constitutional grounds. K.S.A. 2005 Supp. 8-1567(a)(2) provides: "(a) No person shall operate or attempt to operate any vehicle within this state while: . . . (2) the alcohol concentration in the person's blood or breath, as measured within two hours of the time of operating or attempting to operate a vehicle, is .08 or more."

. According to Pollman:

"[T]he statute . . . is unconstitutionally overbroad as it punishes non-criminal conduct, i.e., driving with [an alcohol concentration] below .08 at the time of actual operation. It is also void for vagueness, as it fails to give reasonable notice as to which conduct is prohibited—actually driving with [an alcohol concentration]

over .08, or having [an alcohol concentration] over .08 within two hours of driving? This fact encourages, or at the least, permits arbitrary enforcement, since testing done at the time of operation might well reveal [an alcohol concentration] below the legal limit of .08."

The constitutionality of a statute is a question of law reviewed de novo. *Tolen v. State*, 285 Kan. 672, 673, 176 P.3d 170 (2008). Before addressing the overbreadth and vagueness challenges, it is helpful to clarify the Kansas criminal law at issue.

"Driving under the influence of alcohol or drugs is an absolute liability offense. . . . The only proof required to convict . . . is that the individual engaged in the prohibited conduct." *State v. Creamer*, 26 Kan. App. 2d 914, Syl. ¶ 1, 996 P.2d 339 (2000). The prohibited conduct in the present case was driving with an alcohol concentration which tests at .08 or more within 2 hours of driving. See K.S.A. 2005 Supp. 8-1567(a)(2). "This form of proscription is commonly referred to as a per se violation because it was not material whether the driver was incapable of safely driving a vehicle." *State v. Hartman*, 26 Kan. App. 2d 928, 931, 991 P.2d 911, *rev. denied* 269 Kan. 937 (2000); see *State v. Hobbs*, 276 Kan. 44, 48, 71 P.3d 1140 (2003).

In all likelihood a blood or breath alcohol concentration test would not be conducted while a defendant was driving. See *City of Colby v. Cranston*, 27 Kan. App. 2d 530, 536, 7 P.3d 300, *rev. denied* 269 Kan. 931 (2000). It is not surprising then that K.S.A. 2005 Supp. 8-1567(a)(2) does not refer to a specific alcohol concentration while driving. See *State v. Stallings*, 284 Kan. 741, 742, 163 P.3d 1232 (2007) (An appellate court should "ascertain the legislature's intent through the statutory language it employs."). A different subsection of the statute addresses alcohol concentration while driving; instead of basing guilt on a contemporaneous test result, it allows the determination to be made upon "any competent evidence." K.S.A. 2005 Supp. 8-1567(a)(1). That subsection, however, is not at issue in the present case.

1. *Overbreadth*

Pollman does not claim his alcohol concentration was less than .08 while he was driving. He argues instead that K.S.A. 2005 Supp.

8-1567(a)(2) may sweep up other such individuals. "[O]verbreadth challenges call for relaxing familiar requirements of standing, to allow a determination that the law would be unconstitutionally applied to different parties and different circumstances from those at hand. [Citation omitted.]" *Sabri v. United States*, 541 U.S. 600, 609, 158 L. Ed. 2d 891, 124 S. Ct. 1941 (2004).

Considering these relaxed standing requirements and the "fact-poor records" produced by facial challenges generally, the overbreadth doctrine is applied in "relatively few settings" involving protected rights. 541 U.S. at 609-10 (listing rights such as free speech and right to travel); see also *Smith v. Martens*, 279 Kan. 242, 253, 106 P.3d 28 (2005) ("The overbreadth doctrine should be employed sparingly and only as a last resort."); *State v. Wilson*, 267 Kan. 550, Syl. ¶ 4, 987 P.2d 1060 (1999) ("[T]he overbreadth doctrine is applicable primarily in the First Amendment area."). In contrast to the protected rights which justify overbreadth challenges, "[t]he right to drive a motor vehicle on the public streets is not a natural right but a privilege, subject to reasonable regulation in the public interest." *Standish v. Department of Revenue*, 235 Kan. 900, 904, 683 P.2d 1276 (1984).

Pollman does not question the reasonableness of K.S.A. 2005 Supp. 8-1567(a)(2) as a regulation in the public interest. A failure to brief an issue is generally deemed a waiver or abandonment of the issue. *State v. Walker*, 283 Kan. 587, 594, 153 P.3d 1257 (2007). In any event, we are not persuaded that it is inherently unreasonable to prohibit driving with an alcohol concentration which tests at .08 or more within 2 hours of driving.

We also find unpersuasive the cases Pollman cites, *State v. Baker*, 720 A.2d 1139, 1141 (Del. 1998), and *Com. v. Barud*, 545 Pa. 297, 305, 681 A.2d 162 (1996), both of which assume that a crime only occurs when a certain alcohol concentration exists while driving. That may be the law in those jurisdictions, but it is not the law under K.S.A. 2005 Supp. 8-1567(a)(2). The district court correctly rejected Pollman's overbreadth challenge.

## 2. *Vagueness*

"Courts use a two-part test to determine whether a statute is unconstitutionally vague. First, the court considers whether the statute conveys a sufficiently definite warning of the proscribed conduct when measured by common understanding and practice. Next, the court considers whether the statute adequately guards against arbitrary and discriminatory enforcement." *State v. Rupnick*, 280 Kan. 720, Syl. ¶ 10, 125 P.3d 541 (2005).

Pollman's argument on the first part of the vagueness test—that K.S.A. 2005 Supp. 8-1567(a)(2) is unclear regarding the time during which the alcohol concentration may not meet or exceed .08—fails for reasons described above. Pollman also cites *Baker* and *Barud*, where the courts ruled the statutes in those jurisdictions were vague because a person could not know what his or her alcohol concentration might be after driving. See *Baker*, 720 A.2d at 1148-49; *Barud*, 545 Pa. at 305-06. Of course, the same could be said for a person while driving, suggesting that alcohol concentration limits are intrinsically vague. This court held to the contrary, however, in *City of Overland Park v. Denning*, 12 Kan. App. 2d 375, 376, 744 P.2d 523, *rev. denied* 242 Kan. 902 (1987), and *State v. Larson*, 12 Kan. App. 2d 198, 202, 737 P.2d 880 (1987).

As this court noted in *Larson*, if specific alcohol concentrations are vague because they are not personally verifiable, "speed limits would be too vague (or at least could not be enforced against anyone whose speedometer was broken), since no one can tell simply by use of their own senses the precise speed they are traveling." 12 Kan. App. 2d at 202. In *Denning* this court considered an ordinance which, similar to the statute here, prohibited "a person from operating or attempting to operate any vehicle while the alcohol concentration in the person's blood or breath, within two hours after the person operated or attempted to operate the vehicle, is .10 or more." 12 Kan. App. 2d at 376. This court held: "The language of the ordinance is clear. When measured by common understanding and practice, it conveys a sufficiently definite warning as to the conduct proscribed. [Citation omitted.]" 12 Kan. App. 2d at 376. The same is true for K.S.A. 2005 Supp. 8-1567(a)(2).

Turning to the second part of the vagueness test—arbitrary enforcement—we acknowledge that testing at different times during a 2-hour period may reveal different alcohol concentrations, and it is conceivable that some results might be less than .08 and others equal to or more than that amount. We nevertheless do not agree with the conclusion in *Baker* that this "encourages arbitrary enforcement." 720 A.2d at 1149.

Arbitrary enforcement is possible where a statute fails to provide "minimal guidelines," thereby risking a " 'standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.' [Citation omitted.]" *Kolender v. Lawson*, 461 U.S. 352, 358, 75 L. Ed. 2d 903, 103 S. Ct. 1855 (1983). The Kansas Legislature framed K.S.A. 2005 Supp. 8-1567(a)(2) with reference to a specific alcohol concentration and a specific time limit, leaving almost nothing to personal predilection. Law enforcement officers in Kansas do not have "complete discretion . . . to determine whether the suspect has satisfied the statute," as is the case with a vague statute. *Kolender*, 461 U.S. at 358. K.S.A. 2005 Supp. 8-1567(a)(2) circumscribes DUI enforcement by its provisions relating to scientific testing and the clock.

Finally, we are not presented here with a situation where a law enforcement officer detains and continues to test a suspect in the hope that a rising alcohol concentration might reach .08 before time expires. Even if we were, there would be no issue of vagueness. The statute is clear, and there is only one way to violate it. See *State v. Pendleton*, 18 Kan. App. 2d 179, 186, 849 P.2d 143 (1993) ("[T]o obtain a conviction under K.S.A. 8-1567(a)(2) the State must show the test was conducted within the two-hour limitation period; otherwise, the test results are not competent evidence and are inadmissible to prove a per se violation."). Testing which failed to show a violation would hardly confer upon the authorities " 'a virtually unrestrained power to arrest and charge persons with a violation.' [Citation omitted.]" *Kolender*, 461 U.S. at 360. The district court did not err in its rejection of Pollman's vagueness challenge.

Pollman's conviction is reversed and his sentence is vacated.