No. 101,925

STATE OF KANSAS, *Appellant*, v. SEAN R. ERNESTI, *Appellee*.

(239 P.3d 40)

Opinion filed August 27, 2010.

*Nicole Romine*, assistant district attorney, argued the cause, and *Mark A. Simpson*, assistant district attorney, *Charles E. Branson*, district attorney, and *Steve Six*, attorney general, were on the brief for appellant.

*Jay Norton*, of Norton Hare, L.L.C., of Overland Park, argued the cause and was on the brief for appellee.

*J. Brian Cox*, senior litigation attorney, of Legal Services Bureau, Kansas Department of Revenue, was on the brief for *amicus curiae* Kansas Department of Revenue.

The opinion of the court was delivered by

LUCKERT, J.: In this driving under the influence of alcohol (DUI) criminal proceeding, the district court suppressed the results of a breath test for alcohol after concluding the testing device was not properly certified. The district court reasoned the device's certificate, which was dated as being effective from January 15, 2008, until December 31, 2008, was effectively revoked in March 2008 when the certifying agency substantively changed the certification requirements, adopted new regulations, and revoked the regulations that had governed the January certification. The district court further found that the testing device had not been recertified at the time of the breath test at issue in this case and the agency's prior application for certification did not comply with the new regulations.

On the State's appeal from the suppression order, we reverse and conclude the January certification remained valid because K.S.A. 77-425, a savings statute, preserves rights and remedies vesting under a revoked rule or regulation and because the new regulations do not have retroactive application.

## FACTS

This case arose from the following facts. On July 26, 2008, a law enforcement officer stopped Sean R. Ernesti (Ernesti) for driving over the speed limit. After investigating Ernesti for DUI, the officer arrested Ernesti and transported him to jail for further testing. At the jail, Ernesti agreed to submit to a breath test on the Lawrence Police Department's (LPD) Intoxilyzer 8000. He failed the breath test when the result came back at .138 grams of alcohol per 210 liters of breath. After the breath test was completed, the arresting officer initialed paragraph 9 of the DC-27 form, specifically attesting that "[t]he testing equipment used was certified by the Kansas Department of Health and Environment [KDHE]."

### Certification

The certification that the LPD possessed at the time of the breath test stated that the LPD "has met the requirements of K.A.R. 28-32-4 for testing of human breath for alcohol for law enforcement purposes with the Intoxilyer 8000, serial No.'s 80-002636 and 80-002650 (Mobile)." The certificate was "[e]ffective this 15th day of January 2008" and had an expiration date of December 31, 2008. On the effective date of the certification, the certification process and the quality control of breath test devices were governed by K.A.R. 28-32-1 through K.A.R. 28-32-7. K.A.R. 28-32-4 provided in subsection (a) that each law enforcement agency meeting the standards for test equipment and procedures, as determined by the KDHE, shall receive an annual certificate, which under subsection (b) shall expire at 12 o'clock midnight on December 31 of the year it is issued.

Approximately 3 months after the LPD obtained the January 2008 certificate, KDHE revoked K.A.R. 28-32-1 through K.A.R. 28-32-7 and adopted new regulations that set different standards for certification. The new regulations, K.A.R. 28-32-8 through K.A.R. 28-32-14, became effective March 14, 2008. As of July 2008, when Ernesti was arrested and his breath was tested, the LPD had not recertified the Intoxilyzer 8000 under the new regulations.

In September 2008, approximately 6 months after the new regulations were adopted and approximately 2 months after Ernesti's

breath test, the KDHE issued a new certificate for the LPD's Intoxilyzer 8000. The new certificate indicated that certification was obtained pursuant to K.A.R. 28-32-9. KDHE backdated the effective date, stating it was effective from March 14, 2008, through December 31, 2008. Thus, both certificates (the one issued in January 2008 under K.A.R. 28-32-4 and the one issued in September 2008 under K.A.R. 28-32-9) indicated that certification was good through the end of the year 2008.

After the State charged Ernesti with DUI, he filed a motion to suppress the breath test result based on the failure of the LPD and the KDHE to follow the new regulations, K.A.R. 28-32-8 *et seq.*, and the KDHE's failure to properly certify the Intoxilyzer 8000 as of Ernesti's testing date.

*District Court's Ruling*

The district court agreed with Ernesti's rationale that there was no valid certification for the "agency or testing device" at the time of Ernesti's breath test because the breath testing device used to obtain Ernesti's breath alcohol content "has never been properly certified pursuant to the Kansas Administrative Regulations (K.A.R.) promulgated by the KDHE and could not have been properly certified." The court based these findings on the fact that the LPD's original certificate was issued under the old provisions of the regulations and on the conclusion that "substantive changes" were made to the regulations when the new provisions became effective on March 14, 2008.

The district court pointed out some differences between the old and new administrative regulations. The district court noted that these differences largely revolve around distinctions drawn between the roles and duties of the "agency," "agency custodian," and "device custodian." K.A.R. 28-32-8(a), (b), (h).

The first term, "agency," is defined in the new regulations to mean "any law enforcement agency under whose authority evidential breath alcohol tests are performed." K.A.R. 28-32-8(a). The regulations provide for "agency certification," and the procedure and requirements for the agency certification are set out in K.A.R. 28-32-9, the regulation cited in the LPD certificate that was back-

dated as being effective on March 14, 2008. The old regulations, as the district court noted, also required the "agency" to submit an application for agency certification, but the new regulations are much more detailed as to the requirements of the agency application.

In addition, the new regulations require the "agency head" to submit the agency application. K.A.R. 28-32-9; see K.S.A. 77-602(a) (defining "agency head"). In making an application for certification under the new regulations, the agency head must include "a roster of the certified operators" who perform breath tests for the agency. K.A.R. 28-32-9(b)(2). This roster requirement was not part of the old regulations, and, as Ernesti stated, "[N]o roster had ever been submitted [by the LPD] under either the old or new regulations."

The new regulations also impose duties on the "agency custodian," who is identified as "the employee at a certified agency who is responsible for administering the certified agency's [evidential breath alcohol test] program." K.A.R. 28-32-8(b). The agency custodian is responsible for applying for device certification. K.A.R. 28-32-11. In contrast, under the old regulations, the "agency" applied for certification of the devices and approval of procedures, performance, and training. K.A.R. 28-32-1. The district court found that the State failed to show that there was a separate application for certification of the Intoxilyzer 8000 made by the agency custodian. Indeed, Christine Houston, the supervisor of the breath alcohol program for the KDHE, indicated that she did not know the identity of LPD's agency custodian, and Officer Richard Nichols, the intoxilyzer custodian for the LPD, testified that he was the device custodian, not the agency custodian.

A "device custodian" is defined as "the certified operator employed by a certified agency who is responsible for oversight of the certified agency's EBAT device." K.A.R. 28-32-8(h). The distinction between an agency and a device custodian is significant under the new regulations because the device custodian, while responsible for overseeing the breath testing devices, does not apply for device certification. As previously noted, this duty is now imposed on the agency custodian. K.A.R. 28-32-8(b), (h); K.A.R. 28-32-

11(a). Sergeant Randy Roberts was the person in charge of the LPD's "alcohol program" (and would appear to be the agency custodian), and there was no evidence that Sergeant Roberts had ever submitted an application for the certification of the Intoxilyzer 8000, as required by the new regulations.

In summary, the district court concluded: "The Kansas Department of Health and Environment and the Lawrence Police Department failed to comply with the new regulations and requirements."

The State timely filed this interlocutory appeal pursuant to K.S.A. 22-3603, challenging the suppression ruling. This case was transferred to this court pursuant to K.S.A. 20-3018(c).

## ISSUE 1: DID THE DISTRICT COURT HAVE JURISDICTION TO REVIEW KDHE'S CERTIFICATION OF THE LPD'S INTOXILYZER 8000?

For the first time on appeal, the State raises the preliminary question of whether the district court had jurisdiction to review the KDHE's certification of the LPD's Intoxilyzer 8000. The State contends that the district court's finding that the KDHE did not follow its own regulations in certifying the LPD and the Intoxilyzer 8000 amounted to "an unlawful judicial review of state agency action." In a related argument, the State contends that Ernesti did not have standing to challenge the certification of the device because the certification was directed to the LPD, not Ernesti, and that even if Ernesti had standing, he failed to first exhaust all administrative remedies.

Although the State raises these questions for the first time on appeal, jurisdictional matters may be raised at any time and even on an appellate court's own motion. See *Shipe v. Public Wholesale Water Supply Dist. No. 25*, 289 Kan. 160, 166, 210 P.3d 105 (2009); *Williams v. Lawton*, 288 Kan. 768, 778, 207 P.3d 1027 (2009). Further, standing is a component of subject matter jurisdiction and may be raised for the first time on appeal. Both the general issue of jurisdiction and the more specific issue of standing are issues of law. *Mid-Continent Specialists, Inc. v. Capital Homes*, 279 Kan. 178, 185, 106 P.3d 483 (2005).

The jurisdiction argument presented by the State begins with the correct statement that the legislature has delegated to the KDHE the task of developing regulations establishing procedures, testing protocols, qualifications, and standards of performing testing of human breath for law enforcement purposes. K.S.A. 2009 Supp. 65-1,107(b); see K.S.A. 65-1,109 (making it unlawful for any person to "make any test of the human breath for law enforcement purposes" unless person has complied with KDHE's rules and regulations and the equipment complies with KDHE's rules and regulations). In fulfilling these duties, the KDHE has developed a procedure for law enforcement and other agencies to obtain certification of breath testing devices. An appeal from such a proceeding, as the State argues, would have to be taken under the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq.* The KJRA requires the filing of a petition in order to begin an action for judicial review, and such a petition was not filed in this case. See K.S.A. 77-607; K.S.A. 77-610.

Although these initial steps on which the State's argument is based are correct, those steps do not necessarily lead to the conclusion that the KJRA applies to this appeal. The KJRA only applies to appeals of "agency actions" (K.S.A. 2009 Supp. 77-603[a]), and none of the issues required to resolve this appeal involve an agency action. An "agency action" is defined to mean: "(1) The whole or a part of a rule and regulation or an order; (2) the failure to issue a rule and regulation or an order; or (3) an agency's performance of, or failure to perform, any other duty, function or activity, discretionary or otherwise." K.S.A. 77-602(b). Ernesti does not attack the validity of or the failure to issue a rule or regulation. While he focuses on an agency order—the certification—he does not attack the process of certifying the LPD and its Intoxilyzer 8000 in January 2008 or on the decision that resulted from that application process. (Ernesti does attack the issuance of the September 2008 backdated certificate but, as will be discussed further, we do not reach the validity of that action.)

Rather, the issues we resolve in this appeal were not the subject of any administrative proceeding. Hence, we conclude the State's jurisdiction argument fails. See *State v. MacKenzie*, 114 Wash.

App. 687, 696, 60 P.3d 607 (2002) (holding that in DUI prosecutions trial courts did not reach beyond inherent powers into matters governed by state's Administrative Procedure Act when the courts interpreted administrative regulations on breath alcohol testing machines and addressed issues of regulations' validity and retroactivity).

The State's argument that Ernesti lacks standing also lacks merit. While we agree that Ernesti would lack standing in an action under the KJRA regarding the device's certification, as a person charged with DUI based on a breath test failure, he has prudential standing to argue that the State cannot lay the necessary foundation to admit the breath test results into evidence in a criminal DUI proceeding. See *State v. Strand*, 261 Kan. 895, 898, 933 P.2d 713 (1997) (considering contention that blood alcohol content test results were improperly admitted because device had not been recertified following repair); *State v. Pollman*, 41 Kan. App. 2d 20, 27-28, 204 P.3d 630 (2008) (considering challenge that device was not listed as an approved device in regulation and noting State's failure to show that device had been otherwise evaluated by the KDHE and met the regulations' criteria); *State v. Shaw*, 37 Kan. App. 2d 485, 491-92, 154 P.3d 524 (2007) (addressing DUI defendant's challenge to procedure requirements related to implied consent advisories under K.S.A. 8-1001); see generally *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 892, 179 P.3d 366 (2008) (discussing standing requirement).

In defining the evidentiary foundation for the admission of a test failure in a criminal DUI proceeding, this court has required the State, at a minimum, to present evidence that there was compliance with K.S.A. 2009 Supp. 8-1002(a)(3). See *State v. Bishop*, 264 Kan. 717, 725, 957 P.2d 369 (1998). In various cases, this court and the Court of Appeals have paraphrased these requirements and the parties quibble over the significance of words used in some of those opinions. The important concept from the cases, however, is that K.S.A. 2009 Supp. 8-1002(a)(3) establishes minimal foundation requirements. It requires the State to show:

"(A) The testing equipment used was certified by the Kansas department of health and environment; (B) the testing procedures used were in accordance with the

requirements set out by the Kansas department of health and environment; and (C) the person who operated the testing equipment was certified by the Kansas department of health and environment to operate such equipment." K.S.A. 2009 Supp. 8-1002(a)(3).

Of these three requirements, it is only the first—the certification of equipment by KDHE—that is questioned by Ernesti. He does so by attacking the agency certification issued in January 2008. The Kansas Department of Revenue (KDR), in its *amicus curiae* brief, notes that there is no explicit requirement of agency certification in K.S.A. 2009 Supp. 8-1002(a)(3). Nevertheless, K.A.R. 28-32-1(a)(1) (revoked March 14, 2008) established a process where a law enforcement agency applied to KDHE for the certification of the test equipment and through this mechanism the equipment was certified. *Cf.* K.A.R. 28-32-9(b) (effective March 14, 2008; providing: "[1] The agency head shall specify each certified [evidential breath alcohol test] device proposed for conducting evidential breath alcohol testing."). Further, KDHE worded the certificates (both the one effective January 15, 2008, and the one effective March 14, 2008) to reflect that the LPD "has met the requirements . . . for testing of human breath for alcohol for law enforcement purposes with the Intozilyzer 8000." Consequently, while K.S.A. 2009 Supp. 8-1002(a)(3) does not require proof of agency certification, as a practical matter providing proof of device certification means that an agency applied for and received the certification. We do not, therefore, dismiss Ernesti's argument simply because it is phrased as a failure to obtain agency certification. Further, because our decision today is based on the old regulations, we do not address the foundation requirements under the new regulations.

Under the old regulations, as Ernesti argues, the State must establish that the specific testing device was certified in order for the test results to be admitted into evidence, and Ernesti has standing to challenge whether the State sustained its burden. We, therefore, consider the merits of his challenge.

## Issue 2: Did the district court err by suppressing the breath test result?

The focus of that challenge is the question of whether the district court erred in suppressing the breath test result because the State failed to establish that the device used to test Ernesti's breath was certified pursuant to the regulations that became effective on March 14, 2008.

*Standard of Review*

As we consider this issue, there are at least three possible contexts in which to determine the appropriate standard of review.

First, we are reviewing an order suppressing evidence. An appellate court reviews the factual underpinnings of a motion to suppress by a substantial competent evidence standard and the ultimate legal conclusion by a de novo standard with independent judgment. *State v. Marx*, 289 Kan. 657, 660, 215 P.3d 601 (2009); *State v. Ackward*, 281 Kan. 2, 8, 128 P.3d 382 (2006). In this case, the parties do not dispute the district court's findings of fact. There is no controversy regarding the nature of the certifications and the timeline of relevant events—the January certification, the adoption and repeal of regulations, the testing of Ernesti, and the subsequent reissuance of a certification. The dispute surrounds the legal conclusions; hence, under the motion to suppress standard, our review is de novo.

The second context for consideration of the standard of review is the nature of the legal conclusions at issue. Our analysis, like the district court's, depends on the interpretation and construction of statutes relating to DUI and the testing of blood alcohol content and on the interpretation of administrative regulations promulgated by the KDHE. Appellate review of a district court's interpretation of either statutes or regulations is unlimited. *In re Tax Appeal of Lemons*, 289 Kan. 761, 762, 217 P.3d 41 (2009) (statutes); *State v. Strand*, 261 Kan. 895, 897, 933 P.2d 713 (1997) (regulations).

Third, our focus is on the district court's determination that the State cannot meet the foundation requirements. The question of whether evidentiary foundation requirements have been met is left

largely to the discretion of the district court. *Hemphill v. Kansas Dept. of Revenue*, 270 Kan. 83, 90, 11 P.3d 1165 (2000). Under an abuse of discretion standard, an appellate court will not disturb a district court's decision unless no reasonable person would have taken the same view. See *Vorhees v. Baltazar*, 283 Kan. 389, 393, 153 P.3d 1227 (2007). Yet, even under the deferential abuse of discretion standard of review, an appellate court has unlimited review of legal conclusions upon which a district court's discretionary decision is based. *Kuhn v. Sandoz Pharmaceuticals Corp.*, 270 Kan. 443, 456, 14 P.3d 1170 (2000). Because " '[a] district court by definition abuses its discretion when it makes an error of law, . . . [t]he abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.' " *Kuhn*, 270 Kan. at 456 (quoting *Koon v. United States*, 518 U.S. 81, 100, 135 L. Ed. 2d 392, 116 S. Ct. 2035 [1996]); see also *State v. Shopteese*, 283 Kan. 331, 340, 153 P.3d 1208 (2007) (district judge's discretionary decision protected under abuse of discretion standard "if reasonable persons could differ upon the propriety of the decision as long as the discretionary decision is made within and takes into account the applicable legal standards"). In this appeal, the focus is on the legal conclusion that led to the district court's foundation ruling.

Hence, in each context, our standard of review is unlimited.

## Application of New Regulations

In considering the issue of law that is the focal point of this appeal, the State and *amicus curiae* KDR argue that the district court did not explain why the rights bestowed by the original certificate, issued under the old regulations for the year 2008, would not continue for the remainder of that calendar year. Nor, they argue, did the district court explain why the LPD would be required to meet substantive changes in the administrative regulations that were not effective until *after* the LPD had already received certification for 2008, thereby meeting all the requirements of the regulations in effect at the time of its application. In other words, why the retroactive application of substantive law? See *Kelly v. VinZant*, 287 Kan. 509, 521, 197 P.3d 803 (2008) (stating that a

statutory amendment operates prospectively unless the language of the statute clearly shows that it is the intention of the legislature that it operate retroactively). Given the district court's analysis, both rationales—(1) the certificate was effectively revoked and (2) the LPD failed to comply with the new regulations in making its 2008 application—must be considered.

*Certificate Revoked or Saved?*

The State and *amicus curiae* KDR argue that the January 2008 certificate remained in effect and the rights granted by the certification were not revoked simply because the regulations were revoked. To support the argument, *amicus curiae* KDR points to K.S.A. 77-425, which states in relevant part:

"The revocation of a rule and regulation by a state agency shall not be construed as reviving a rule and regulation previously revoked by such agency, nor shall such revocation by a state agency be construed as affecting any right which accrued, any duty imposed, any penalty incurred, nor any proceeding commenced, under or by virtue of the rule and regulation revoked."

The KDR argues that under this provision the revocation of the regulations did not impact the certification that had been issued in January 2008, which on its face stated it was effective from January 15, 2008, until December 31, 2008.

Before discussing the substance of K.S.A. 77-425 and its impact on the issues, we must consider the fact the statute was first cited and discussed in the *amicus* brief filed by the KDR. In other words, it was not cited to the district court or in the appellant's or appellee's initial briefs. It was, however, argued in this appeal sufficiently early that Ernesti was able to submit a brief discussing the implications of the statute and both the State and Ernesti discussed K.S.A. 77-425 during oral arguments before this court. Hence, the parties had a full opportunity to argue the impact of the provision. Further, even though K.S.A. 77-425 was not considered by the district court, it can be considered for the first time on appeal because it presents a question of law that is potentially dispositive of the appeal. See *State v. Hawkins*, 285 Kan. 842, 845, 176 P.3d 174 (2008).

This court has not previously applied K.S.A. 77-425 but has applied a similar provision relating to legislation, K.S.A. 77-201 *First.* In doing so, we have construed K.S.A. 77-201 *First* as a general savings statute that preserves all rights and remedies under a repealed statute when the repealing statute is silent as to whether such rights and remedies shall be abrogated. See, *e.g., State v. Armstrong*, 238 Kan. 559, 566, 712 P.2d 1258 (1986) (holding that defendant was not entitled to dismissal on basis that statutes under which he was charged had been amended after the offenses were committed); *City of Kansas City v. Griffin*, 233 Kan. 685, 689, 664 P.2d 865 (1983) ("Where a new statute or ordinance defining a crime is enacted which is still the same basic crime with the same basic elements and only the penalty is increased, it seems logical to us that, in the absence of some evidence of a contrary intention, the legislative intent is not to abate pending prosecutions.").

Cases applying K.S.A. 77-201 *First* are helpful in two respects. First, the cases recognize that the statute abrogates the common-law rule that the repeal of a statute terminates rights accruing or prosecutions commenced under the repealed statute. See *Griffin*, 233 Kan. at 686-87. In this case, the district court applied the common-law rule without regard to the effect of the general, statutory savings provision. Yet, K.S.A. 77-425, in the same manner as K.S.A. 77-201 *First*, is a general savings statute that preserves all rights and remedies under a repealed regulation when the repealing regulation is silent as to whether such rights and remedies shall be abrogated. As such, when a regulation is repealed, K.S.A. 77-425 abrogates the common-law rule that the repeal terminates rights accruing or proceedings commenced under the repealed provision.

Second, the cases applying K.S.A. 77-201 *First* address an argument made by Ernesti—*i.e.*, that a savings statute has no application because the proceedings against him were not initiated until after the regulations were revoked. This narrow focus on the term "proceeding" in K.S.A. 77-425 and narrow view of what that term means is contrary to the case law under K.S.A. 77-201 *First*. In *The State v. City of Topeka*, 68 Kan. 177, 74 Pac. 647 (1903), this court explained that the term "proceeding" as used in the statute

is not limited to judicial proceedings. Rather, in the context of that case, the term applied to "the organization, powers, and duties of cities of the first class, and particularly of issuing bonds and the erection of public improvements, and it was to protect proceedings of this character commenced under previously existing laws that the saving clause was enacted." *Topeka*, 68 Kan. at 187. Here, a different context applies to the "proceeding." As the State and the KDR note, and as we previously discussed in the context of the jurisdiction argument, the certification process requires an administrative proceeding that ends with the denial or issuance of a certificate. In this case, the LPD initiated a proceeding and received the administrative award of a certificate—*i.e.*, an administrative order—that was valid until December 31, 2008. The subsequent adoption of regulations would not require that the LPD meet new requirements for the already-issued certificate to be valid.

Rather, the LPD was entitled—indeed, it had the right—to rely on the authorized certificate without fear of penalty. This right arises primarily from the fact that if there was not a valid certification of the testing device both the LPD officer who administered the test and the LPD were potentially subject to penalties. As it would affect the officer, the legislature has declared it a crime to test human breath for law enforcement purposes unless the testing device was approved by the KDHE, stating:

"(a) It shall be unlawful for any person to make any test of the human breath for law enforcement purposes, unless:

. . . .

(2) the apparatus, equipment or device used by such person in the testing of human breath for law enforcement purposes is of a type approved by the secretary of health and environment and otherwise complies with the rules and regulations of the secretary of health and environment adopted pursuant to K.S.A. 65-1,107 and amendments thereto to govern the periodic inspection of such apparatus, equipment and devices.

"(b) Any person who violates any provision of subsection (a) shall be guilty of a class C misdemeanor.

"(c) Nothing in this section shall be construed to prohibit the use of devices approved pursuant to K.S.A. 65-1,107 and amendments thereto for . . . law enforcement purposes." K.S.A. 65-1,109.

Further, there are potential consequences for any agency that allows testing without compliance with the regulations. See K.A.R.

28-32-9(f) ("[t]he failure to comply with this regulation may be grounds for suspension or revocation of the agency's certification"); K.A.R. 28-32-10(f) (relating to operator certification; "[t]he failure of an applicant or a certified operator to comply with this regulation may be grounds for denial of the application or renewal or for suspension or revocation of the operator's certificate").

The LPD sought and obtained a certification from the KDHE, and device operators relied on that certification as a license to legally perform breath tests for law enforcement purposes. Thus, the certificate protected important interests and vested an accrued right, and suspension of the issued certificate would involve state action that adjudicates important interests. As such, the certificate cannot be taken away without the procedural due process required by the Fourteenth Amendment to the United States Constitution. See *Bell v. Burson*, 402 U.S. 535, 539, 29 L. Ed. 2d 90, 91 S. Ct. 1586 (1971); *State v. Heironimus*, 262 Kan. 796, 803, 941 P.2d 1356 (1997).

Because such an accrued right existed, K.S.A. 77-425 preserves the validity of both the administrative process of seeking a certificate and the resulting administrative order represented by a certificate issued pursuant to K.A.R. 28-32-4, even after the regulation was revoked. Consequently, a certificate issued pursuant to K.A.R. 28-32-4 remains valid until its original expiration date even though the regulation was revoked.

*Retroactive Application*

The second rationale that is at least implied by the district court's conclusions is that the State could have laid a sufficient foundation by presenting evidence that the LPD's 2008 application complied with the not-yet-adopted regulations. As previously noted, the district court observed that there was some evidence that the application was made even before the new regulations were promulgated. Yet, the court searched the record for evidence of compliance with the new regulations in areas where the regulations varied from the old. For example, the district court concluded there was no evidence that the agency custodian had submitted an

application or that a roster of certified operators had been submitted.

As the State notes, requiring this type of prescient compliance essentially grants retroactive effect to the regulations. Yet, generally administrative regulations operate prospectively unless a contrary intent is clearly indicated. *Jones v. The Grain Club*, 227 Kan. 148, 150, 605 P.2d 142 (1980). There is no requirement in K.S.A. 2009 Supp. 8-1002 that the testing device be certified under regulations in effect on the date of testing; rather, the device must simply be certified. Nor is there a provision in K.A.R. 28-32-8 *et seq.* requiring any previously certified agency to reapply for device certification for the year 2008 or any other indication of an intent to apply the regulations retroactively.

Further, as a general rule, additional requirements cannot be imposed on proceedings that are under way or have already been finalized when new provisions are enacted or adopted. See generally *Jones*, 227 Kan. at 150-51 (filing of complaint with Kansas Commission on Civil Rights in accord with requirements at time sufficient to vest jurisdiction; not necessary to comply with subsequently enacted jurisdictional requirements). In the present case, the requirements that specific agency personnel fill out separate applications for certification of the agency, breath testing devices, and operating personnel were not provided for in the procedures in place when the LPD's application was filed. Hence, even if the LPD had attempted to meet the substance of proposed regulations, no procedure was in place for doing so.

Under those circumstances, the district court's interpretation of the requirements would lead to a nonsensical result—a law enforcement agency would have to have met requirements not yet in place without a procedural mechanism for doing so. Imposing this impossible task would result in an undermining of the purpose of establishing procedures, testing protocols, qualifications, and standards of performing testing of human breath for law enforcement purposes. Consequently, such an application of the regulations would not lead to "consistent, harmonious, and sensible" results. *In re Marriage of Ross*, 245 Kan. 591, 594, 783 P.2d 331 (1989); see *Barbury v. Duckwall Alco Stores, Inc.*, 42 Kan. App. 2d 693,

Syl. ¶ 1, 215 P.3d 643 (2009) (stating that to be valid, administrative regulations must be within agency's statutory authority, and they must be appropriate, reasonable, and consistent with the underlying statutes). The district court clearly believed that the State was responsible for the resulting void and the inability to conduct legal testing. While it was within the State's control to prevent such a void, the State did so when the legislature adopted the savings provision in K.S.A. 77-425.

Consequently, we conclude that K.A.R. 28-32-8 *et seq.* apply prospectively. The district court erred in its interpretation of the administrative regulations and thereby deciding to retroactively apply the certification requirements under the new regulations.

*District Court's Requiring Possession of New Certificate at Time of Breath Test*

Finally, the State argues that the district court placed too high an evidentiary burden on the State by requiring the LPD to possess the new, reissued certificate at the time the breath test was administered on Ernesti. Although the LPD had possession of the January 15, 2008, certificate (granting certification through December 31, 2008), the district court did not consider the certificate to be sufficient in light of the enactment of the new regulations on March 14, 2008. Likewise, the reissued certificate was deemed to be insufficient, in part because it was issued after Ernesti's July 2008 breath test and backdated to March 14, 2008 (granting certification through December 31, 2008).

Because of the savings clause and prospective application rationale we have applied, this issue is rendered moot. So, too, are the parties' arguments regarding the effectiveness of the backdated certificate.

In conclusion, we find that the district court erred in applying the new administrative regulations to this case and in failing to recognize the continued validity of the January 2008 certificate. Consequently, the LPD correctly possessed a valid certificate for the device used to administer the breath alcohol test to Ernesti, a certificate that was issued pursuant to the administrative regulations in effect at the time of certification. The district court erred

in concluding otherwise. The breath test result should not have been suppressed on this basis.

Reversed and remanded.