NOT DESIGNATED FOR PUBLICATION

No. 117,401

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of M.V.J.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN M. SMITH, judge. Opinion filed November 9, 2017.
Affirmed.

*Anita Settle Kemp*, of A.S. Kemp Law, Inc., of Wichita, for appellant natural mother.

*Julie A. Koon*, assistant district attorney, and *Marc Bennett*, district attorney, for appellee.

Before GARDNER, P.J., PIERRON and ATCHESON, JJ.

PER CURIAM:  C.M.J. appeals the order of the Sedgwick County District Court terminating her parental rights to M.V.J., her 13-year-old daughter. C.M.J. challenges the district court's ruling admitting her positive drug test as evidence at the termination hearing and, more broadly, the sufficiency of the evidence demonstrating her unfitness and that M.V.J.'s best interests were served by severing their relationship. We find the district court properly considered the drug test and appropriately found C.M.J.'s chronic and seemingly intractable substance abuse problems coupled with M.V.J.'s pronounced special needs sufficiently supported the termination order. We, therefore, affirm.

1

When she was born in 2003, M.V.J. had cocaine in her system. The record in this case shows cocaine to be C.M.J.'s drug of choice, although she has also abused alcohol from time to time. M.V.J. had a stroke or some other neurological injury at birth. She suffers from a seizure disorder for which she takes medication. And she has marked intellectual and social limitations. At the time of the termination hearing about a year ago, M.V.J. could not recognize numbers or letters and was unable to brush her teeth, bathe, or dress without considerable help. She apparently could not learn those tasks simply through the repetitive performance of them, according to her foster caregivers.

In 2007, M.V.J. and a younger sibling were found to be children in need of care and were temporarily removed from C.M.J.'s custody. C.M.J. neglected them principally because of her cocaine addiction. The family was reintegrated about 18 months later after C.M.J. underwent drug treatment and completed various other classes and programs. The district court took judicial notice of that case and a number of criminal and traffic proceedings against C.M.J. since then. By the time this case began in spring 2015, C.M.J. had her driver's license suspended and was on probation.

C.M.J. was taken into custody in May 2015 on a probation violation apparently stemming from an incident the month before when she drove to M.V.J.'s school while intoxicated and hit a parked car there. Upon her arrest for the probation violation in that criminal case, C.M.J. left M.V.J. with a friend who was visiting from out of town. The friend, however, had to return home about 10 days later, effectively leaving M.V.J. without adult supervision. M.V.J. was then taken into protective custody, and the district attorney's office began this child in need of care proceeding. In the meantime, C.M.J. was ordered to serve six months in jail on the probation revocation.

After being placed in state custody, M.V.J. was given a hair follicle drug test that showed positive for cocaine. At that time, C.M.J. expressed surprise about the test result

to an investigator for the Department for Children and Families and disclaimed any knowledge of how M.V.J. would have come into contact with cocaine.

The case manager assigned in this proceeding put together a 90-day reintegration plan for C.M.J. and M.V.J. to go into effect upon C.M.J.'s release from jail in November 2015. According to the evidence admitted at the termination hearing, C.M.J. worked diligently and productively toward completing her reintegration tasks and had good supervised visits with M.V.J. As part of the reintegration protocols, C.M.J. provided a hair sample in late January 2016 for drug testing. The lab results were positive for cocaine and a metabolite of cocaine. C.M.J. adamantly denied having used cocaine in the preceding nine months. As we understand the record, this test was not admitted as substantive evidence at the termination hearing—that is, to show C.M.J. had used cocaine—but merely to explain how the case manager and other social service agency representatives then handled the case. Visitation between C.M.J. and M.V.J. was immediately curtailed.

The case manager testified that the positive drug test surprised her, especially given the progress C.M.J. was making with other aspects of the family reintegration plan. The case manager arranged for C.M.J. to take a second hair follicle drug test in June 2016 through a different laboratory. That test also showed C.M.J. had used cocaine. Again, C.M.J. denied doing so. The district attorney introduced the results of this testing at the termination hearing over C.M.J.'s objection—a point on appeal we address shortly. C.M.J. failed to show up for several scheduled drug tests after that.

At the termination hearing, the case manager testified that the positive drug test raised several substantial concerns weighing against family reintegration. First, C.M.J. apparently had returned to her drug of choice, thereby highlighting a recurrent, deep-seated substance abuse problem that a one-time use of another drug might not suggest. Second, C.M.J. refused to acknowledge her relapse, establishing both a lack of candor and an attitude incompatible with effective counseling and treatment. Had C.M.J.

admitted using cocaine, the case manager suggested a delay in the termination proceedings might have been considered to allow for treatment and an extension of the reintegration plan.

The case manager, however, recommended termination of C.M.J.'s parental rights given her history of substance abuse and continued use of cocaine. That circumstance likely rendered C.M.J. incapable of addressing M.V.J.'s multidimensional needs and placed her at high risk for additional criminal problems that would only further disrupt M.V.J.'s home environment. C.M.J.'s unwillingness to recognize and admit her continuing drug abuse impaired any chance her addiction might be successfully treated in a timely fashion. The case manager also cited as a secondary concern C.M.J.'s decision to continue driving on a regular basis despite having a suspended driver's license—conduct that also could send her back to jail. See K.S.A. 2016 Supp. 8-262(a) (mandatory terms of incarceration for repeatedly driving with suspended license).

C.M.J. testified at the termination hearing and, pertinent here, denied having used cocaine after April 2015. She said she had no explanation for the positive drug test results. C.M.J. otherwise testified to the steps she had taken to comply with the family reintegration plan, her love for M.V.J., and her desire to be a parent to her daughter.

The district court made an express credibility determination against C.M.J. and found she had used cocaine as indicated by the June 2016 hair follicle drug test. Based principally on that conclusion and C.M.J.'s extensive substance abuse history, the district court found C.M.J. could not provide the kind of stable and especially attentive environment M.V.J. required because of her particular needs. The district court found C.M.J. to be unfit as a parent on three statutory grounds:

• Alcohol or drug abuse of such a character as to render the parent unable to care for the ongoing physical, mental, or emotional needs of the child, as provided in K.S.A. 38-2269(b)(3);

4

• A lack of effort on the part of the parent to change circumstances, conduct, or conditions to meet the needs of the child, as provided in K.S.A. 38-2269(b)(8); and

• A failure to carry out a reasonable plan directed toward the integration of the child into a parental home, as provided in K.S.A. 38-2269(c)(3).

The district court also found C.M.J.'s unacknowledged drug abuse was unlikely to improve in the foreseeable future in a way that would alleviate her parental unfitness. Finally, the district court found termination of C.M.J.'s parental rights would be in M.V.J.'s best interests in securing a measure of stability for her in her current foster placement that would likely continue pending any adoption. Consistent with those determinations, the district court entered an order terminating C.M.J.'s parental rights. C.M.J. has appealed.

LEGAL ANALYSIS

C.M.J. raises two issues on appeal:  (1) The evidentiary foundation to admit the results of the hair follicle drug test done in June 2016; and (2) the sufficiency of the evidence to support the legal components of a termination finding—parental unfitness, duration of the unfitness, and the child's best interests. We take up the points in that order.

*Drug Test Results*

C.M.J. contends the district court erred in admitting the results of the hair follicle drug test that showed she has used cocaine. In the district court, C.M.J. emphasized the district attorney's failure to call the chemist who performed the initial testing as a witness and secondarily questioned the sufficiency of the chain of custody of the hair sample. On appeal, C.M.J. shifted focus more to the chain of custody. Neither line of attack

5

establishes error. C.M.J. does not dispute the science behind or the general accuracy of hair follicle testing as a means of detecting drug use.

As a general rule, the district court's determination on whether a sufficient foundation has been shown to admit otherwise relevant evidence entails an exercise of judicial discretion. *State v. Ernesti*, 291 Kan. 54, Syl. ¶ 10, 239 P.3d 40 (2010). Here, the general rule governs, and the drug test was plainly relevant. We, therefore, review for abuse of discretion. A district court exceeds that discretion if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

Here, a technician testified about how he obtained a hair sample from C.M.J., assigned an identification number to the sample, packaged the sample, and had it shipped to the laboratory for testing. The district attorney called personnel from the testing laboratory as witnesses. They testified to the procedures for logging in samples, tracking those samples within the laboratory, documenting test results, and maintaining records of those steps keyed to the assigned identification number. The district attorney did not call the chemist performing the initial testing of C.M.J.'s hair sample because that individual no longer worked for the laboratory. When an initial test comes back positive for a controlled substance, the laboratory runs a second or confirming test. The chemist performing the confirming test was a witness at the termination hearing. The confirming test was also positive for cocaine.

Besides the departed chemist, the district attorney did not call as witnesses everyone who handled the hair sample at the laboratory. For example, the person who received the sample at the laboratory did not testify. But another witness explained the

6

procedures for compiling the log on which samples are tracked within the laboratory and noted the entries for C.M.J.'s hair sample.

The district court overruled C.M.J.'s objections to the admission of the test results, finding adequate proof of a reliable chain of custody for the hair sample and a sufficient foundation for the reported positive for cocaine. We cannot say the district court abused its discretion in admitting the test results. The testimony established a foundation for admitting the positive result of the confirming test. The evidence proved a chain of custody that reasonably showed C.M.J.'s hair had been tested and the sample had not been materially altered before the testing. See *State v. Horton*, 283 Kan. 44, 62, 151 P.3d 9 (2007). The district attorney was not required to account for every link in the chain of custody with testimony from each person handling the evidence. Strict procedures for identifying and processing evidence, along with reliable documentation that those procedures have been followed with respect to a particular piece of evidence, may be sufficient to forge some or even most of those links. Even if there were some gaps, that would affect the weight to be given the evidence rather than its admissibility. 283 Kan. at 62.

The district court properly admitted and considered the results from the June 2016 hair follicle drug test.

*Sufficiency of the Evidence for Termination*

In considering the overall sufficiency of the evidence, we start with some general principles and standards governing the termination of parental rights. A parent has a constitutionally protected liberty interest in the relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 759-60, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Given the inherent importance and unique character of that relationship, the right has been deemed fundamental. Accordingly, the State may extinguish the legal bonds between parent and

7

child only upon clear and convincing proof of parental unfitness. K.S.A. 2016 Supp. 38-2269(a); *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014). As provided in K.S.A. 2016 Supp. 38-2269(a), the State has to prove the parent to be unfit "by reason of conduct or condition" making him or her "unable to care properly for a child" and that the circumstances are "unlikely to change in the foreseeable future." The statute contains a nonexclusive list of nine conditions that singularly or in combination would amount to unfitness. K.S.A. 2016 Supp. 38-2269(b). And the statute lists four other factors to be considered if a parent no longer has physical custody of a child. K.S.A. 2016 Supp. 38-2269(c).

In reviewing a district court's determination of unfitness, an appellate court must be convinced, based on the full evidentiary record considered in a light favoring the State as the prevailing party, that a rational fact-finder could have found that decision "highly probable, *i.e.*, [supported] by clear and convincing evidence." *In re B.D.-Y.*, 286 Kan. at 705. The appellate court cannot weigh conflicting evidence, pass on the credibility of witnesses, or otherwise independently decide disputed questions of fact. 286 Kan. at 705. In short, any conflicts in evidence have to be resolved to the State's benefit and against C.M.J.

Having found unfitness, the district court then turns to whether termination of parental rights is "in the best interests of the child." K.S.A. 2016 Supp. 38-2269(g). As directed by the language of K.S.A. 2016 Supp. 38-2269(g), the district court must accord "primary consideration to the physical, mental[,] and emotional health of the child." The district court makes that determination based on a preponderance of the evidence. *In re R.S.*, 50 Kan. App. 2d at 1116. The best-interests issue is essentially entrusted to the district court acting within its sound judicial discretion. 50 Kan. App. 2d at 1115-16. An appellate court reviews those sorts of decisions for abuse of discretion using the criteria we have already outlined.

The district court identified three statutory grounds on which C.M.J. was shown to be unfit. Each, however, pivoted on C.M.J. continuing abuse of cocaine and, to a lesser extent, alcohol. Under K.S.A. 2016 Supp. 38-2269(b)(3), C.M.J.'s substance abuse is the specified statutory factor rendering her unfit. The other two statutory factors indirectly arise from C.M.J.'s inability to remain drug free for any extended period.

The evidence established C.M.J. has abused cocaine for years and appears to be incapable of permanently escaping its clutches, notwithstanding numerous attempts that included a previous child in need of care proceeding. C.M.J.'s drug abuse has left her unable to meet the especially pronounced needs of M.V.J., which demand nearly constant attentiveness from her caregivers. Likewise, C.M.J.'s drug abuse has fostered substantial collateral obstacles for her, including the suspension of her driver's license and significant time in jail time for continuing negative contacts with the criminal justice system.

Particularly troubling to the assigned case manager and, in turn, to the district court has been C.M.J.'s adamant denial that she has used cocaine since April 2015—an assertion at odds with the hair follicle drug test. The contradiction, which the district court resolved against C.M.J., not only undercuts her credibility but represents a substantial impediment to effective intervention and treatment.

Those circumstances sufficiently support the district court's determination that C.M.J. was presently unfit to parent M.V.J., taking account of the degree of proof needed to satisfy appellate review on an issue that required clear and convincing evidence in the first instance. Similarly, we find the circumstances, particularly C.M.J.'s repeated denials of recent drug use, justified the district court's conclusion that the condition of unfitness would continue for the foreseeable future. The district court's findings warranted termination of C.M.J.'s parental rights if termination would be in M.V.J.'s best interests.

Although we have no reason to doubt the sincerity of C.M.J.'s expressions of love and concern for M.V.J., they are not the test of best interests. By all accounts, M.V.J.

9

requires highly attentive care on a daily basis without interruption or disruption. The evidence indicates M.V.J. has been afforded that stability in a foster care placement expected to continue until she becomes part of an adoptive family. C.M.J. could, at most, offer an environment fraught with uncertainty and more likely with drug-related neglect and even abandonment of M.V.J. We find the district court took full measure of the facts and the governing law in making a best interests determination favoring termination. And we readily conclude other district courts would have come to the same decision in comparable circumstances. In short, we find no abuse of discretion on that score.

Having considered the points C.M.J. has raised on appeal in light of the record, we conclude the district court did not err in terminating her parental rights with respect to M.V.J.

Affirmed.