NOT DESIGNATED FOR PUBLICATION

No. 121,191

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SABRINA RENEE ABEL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; PATRICK H. THOMPSON and JARED B. JOHNSON, judges. Opinion filed September 17, 2020. Affirmed.

*Julie McKenna*, of McKenna Law Office, P.A., of Salina, for appellant.

*W. Brad Sutton*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., ATCHESON, J., and BURGESS, S.J.

BUSER, J.: Sabrina Renee Abel was charged with driving under the influence of alcohol (DUI). Before trial, she filed a combined motion to suppress and motion in limine to exclude incriminating breath alcohol evidence from an Intoxilyzer 9000 at trial. In particular, Abel contended the Kansas Department of Health and Environment (KDHE) failed to properly certify the Intoxilyzer 9000 model used to test her breath for the presence of alcohol. The district court denied the motion and admitted the evidence at trial.

1

On appeal, Abel reprises the argument she made in the district court that the Intoxilyzer 9000 model was not properly certified by KDHE because it did not meet the requirements of K.A.R. 28-32-11(b).

Upon our review, we find that we have prudential jurisdiction to consider this issue as a question regarding the admissibility of evidence resulting from an evidential breath alcohol test (EBAT) device. Applying Kansas statutes and caselaw pertaining to the admissibility of EBAT device evidence to the specific facts of this case, we hold the district court did not abuse its discretion in denying Abel's motion to suppress evidence of the Intoxilyzer 9000 results at trial. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On May 14, 2016, Abel was charged with driving under the influence while her alcohol breath concentration was 0.08 or more. This was her second offense. Alternatively, the State charged Abel with operating or attempting to operate a vehicle while under the influence of alcohol to a degree that rendered her incapable of safely driving a vehicle. Before trial, Abel filed a "Motion and Memoranda to Suppress or In Limine to Exclude Intoxilyzer 9000 Results and Notice of Intent to Elicit Incriminating Evidence." The motion challenged the incriminating results of the EBAT device, arguing that the State was not authorized to certify or use the Intoxilyzer 9000 model because "it is not a conforming product in accordance with Kansas statutes, rules and regulations."

The hearing on the motion was held on April 13, 2018. Before the hearing was held, the regulation at issue, K.A.R. 28-32-11, was amended to strike certain language in subsection (b). See K.A.R. 28-32-11 (2020 Supp.). That language required that for an EBAT device to be considered for certification in Kansas, it must be included on the confirming products list (CPL) promulgated by the National Highway Traffic Safety Administration (NHTSA). Compare K.A.R. 28-32-11 with K.A.R. 28-32-11 (2020

2

Supp.). At the hearing on the motion, the district court determined that the language stricken from subsection (b) of K.A.R. 28-32-11 became effective on April 6, 2018, *after* Abel had provided her breath test on the Intoxilyzer 9000. As a result, the prior version of subsection (b) which required that an EBAT device be included on the CPL to be considered for certification was applicable.

At the hearing, Christine Houston, supervisor of the breath alcohol program with KDHE, testified on behalf of the State. Of note, she was the only witness to testify at the hearing. Houston testified that as part of her duties, she: "tabulate[s] all the curriculum," develops the schedule, supervises employees, conducts site inspections, teaches operators how to use the instrumentation, and purchases and orders "any devices or material or equipment that the breath alcohol program uses." According to Houston, as part of her duties, the Secretary of KDHE authorized her to certify EBAT devices for use in Kansas. She testified that she initiated and completed the certification process for the Intoxilyzer 9000 model.

Houston explained that the Intoxilyzer 9000 model was not on the CPL, as required by K.A.R. 28-32-11, because it had not been developed at the time the list was last published in the Federal Register in 2012. Only the Intoxilyzer 5000 and 8000 models were included on the CPL. Houston was aware the Intoxilyzer 9000 was not on the CPL, but she obtained a letter from NHTSA confirming the Intoxilyzer 9000 had been tested by NHTSA and, as a result, would be included on the next CPL when it was published in the Federal Register in 2017. Houston confirmed the Intoxilyzer 9000 was, in fact, added to the CPL when it was published in the Federal Register in 2017.

Having determined that the Intoxilyzer 9000 model was the best EBAT device to replace the Intoxilyzer 8000, Houston began the approval process to purchase the device for use by Kansas law enforcement agencies. According to Houston, to obtain approval she needed "to say why we're going to purchase this instrument, and that goes all the way

3

up to the secretary [of KDHE] through every chain of command." This process included obtaining approval from the director of environment, the Secretary of KDHE, KDHE's legal counsel, the Department of Administration, and the Kansas Attorney General's office.

Houston testified the Intoxilyzer 9000 model was approved based on the NHTSA letter, and she also obtained approval from the Kansas Department of Administration to evaluate the EBAT. Once the Intoxilyzer 9000 passed the inspection and was approved, Houston purchased the devices for use in Kansas.

After purchase, the Intoxilyzer 9000 devices were certified by KDHE. The Intoxilyzer 9000 (serial number 90-002070) that was used to test Abel's breath, was certified by the KDHE effective January 1, 2016, through December 31, 2016. In summary, at the time the Intoxilyzer 9000 measured the alcohol content in Abel's breath on May 14, 2016, it was certified by KDHE.

After the hearing, on May 11, 2018, the district court issued findings of fact and conclusions of law from the bench while ruling on Abel's motion. As discussed below, the district court found that Abel had "prudential standing" to object to the admission of the Intoxilyzer results at trial. The district court also found the "Intoxilyzer [9000] was certified by KDHE effective January 1, 2016, and that certification was in effect on the date that the sample was taken" from Abel.

Additionally, the district court found that although the Intoxilyzer 9000 model was not on the CPL when it was certified by KDHE, "there is a rebuttable presumption in case law of validity that attaches to all actions of an administrative agency" and the presumption applied in this case. The district court held KDHE properly certified the Intoxilyzer 9000 model because the agency obtained the letter from NHTSA stating that

4

it would be included on the updated CPL, the Intoxilyzer 9000 was approved by the chain of command at KDHE, and the device was certified by KDHE.

In making his ruling the district judge reasoned:

"The [c]ourt sees nothing in these facts that indicates the agency acted in an unreasonable, arbitrary, or capricious manner. The process used in the decision of the agency to certify the 9000 complied with the intent of the regulation to allow only devices meeting NHTSA's compliance to be certified, and NHTSA had indicated it did meet those requirements, so the [c]ourt is going to find that the KDHE properly certified the 9000.
"Since I've decided that the KDHE properly certified the [Intoxilyzer] 9000, the motion to suppress the results is denied."

A jury trial was held on January 29, 2019. During the trial, Abel contemporaneously renewed her objection when the State moved to admit the Intoxilyzer 9000 test results which indicated that Abel had a breath alcohol reading of 0.136. The jury convicted Abel of driving under the influence while the alcohol concentration on her breath was 0.08 or more. She was acquitted of the alternative charge of DUI. Abel was sentenced to 12 months in the county jail and ordered to serve 24 months' probation.

Abel appeals.

STANDING

Preliminarily, the State contends that Abel does not have standing to object to KDHE's process of certifying the Intoxilyzer 9000 model in this litigation. The State correctly notes that the district court had concerns that Abel did not have standing to attack the KDHE's certification process since such an action would fall under the purview of the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq., and Abel did not file

5

the requisite petition for judicial review necessary to commence the process of challenging the agency's certification process. Without substantive argument, the State submits that it "shares the same concern as the district court as to standing and jurisdiction." Abel did not file a reply brief countering the State's standing and jurisdictional concerns.

In its jurisdictional ruling, the district court determined that Abel was "attacking the process of KDHE in deciding to certify the Intoxilyzer 9000 and alleging [the agency] did not comply with [K.A.R.] 28-32-11(b) in certifying the Intoxilyzer 9000." Based on Abel's claim, the district court questioned whether Abel had standing to object "because it appears the defendant is attacking an agency action, which would bring it under the act for judicial review and civil enforcement of agency actions." However, because the State did not challenge Abel's standing and "appear[ed] to concede the point," the district court found, "despite some doubts, that there is prudential standing."

An appellate court has a duty to question jurisdiction on its own initiative. When the record discloses a lack of jurisdiction, the appellate court must dismiss the appeal. See *State v. Delacruz*, 307 Kan. 523, 529, 411 P.3d 1207 (2018). Subject matter jurisdiction may be raised at any time, whether for the first time on appeal or even on the appellate court's own motion. *State v. Castillo*, 54 Kan. App. 2d 217, 219, 397 P.3d 1248 (2017). Standing to bring an action is a component of subject matter jurisdiction and may also be raised at any time. *Peterson v. Ferrell*, 302 Kan. 99, 102-03, 349 P.3d 1269 (2015). Whether jurisdiction exists is a question of law over which our court's scope of review is unlimited. *State v. Smith*, 304 Kan. 916, 919, 377 P.3d 414 (2016).

In considering the standing issue, the district court relied on another DUI case, *State v. Ernesti*, 291 Kan. 54, 239 P.3d 40 (2010). In *Ernesti*, the district court suppressed the results of an alcohol breath test upon finding that the Intoxilyzer 8000 device was not certified at the time the testing was administered. In particular, the KDHE's annual

6

certificate was dated effective January 15, 2008; but, in the district court's view, it was effectively revoked in March 2008 when the agency substantively changed the certification requirements, adopted new regulations, and revoked the prior ones. The district court also found the Intoxilyzer 8000 had not been recertified under the new requirements before Ernesti was tested on July 26, 2008. The State appealed from the suppression order and our Supreme Court reversed the district court, holding that the January 15, 2008 certification remained valid because of a savings statute, K.S.A. 77-425. *Ernesti*, 291 Kan. at 56.

Relevant to this case, in *Ernesti*, the State challenged the district court's jurisdiction to consider the defendant's claim that the Intoxilyzer 8000 was improperly certified. The State also disputed whether the defendant had "standing to challenge the certification of the device because the certification was directed to the [local police department], not Ernesti." 291 Kan. at 60.

Our Supreme Court in *Ernesti* held that

"the legislature has delegated to the KDHE the task of developing regulations[,] establishing procedures, testing protocols, qualifications, and standards of performing testing of human breath for law enforcement purposes. [Citations omitted.] In fulfilling these duties, the KDHE has developed a procedure for law enforcement and other agencies to obtain certification of breath testing devices. An appeal from such a proceeding, as the State argues, would have to be taken under the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq*. The KJRA requires the filing of a petition in order to begin an action for judicial review, and such a petition was not filed in this case.

"Although these initial steps on which the State's argument is based are correct, those steps do not necessarily lead to the conclusion that the KJRA applies to this appeal. The KJRA only applies to appeals of 'agency actions' (K.S.A. 2009 Supp. 77-603[a]), and none of the issues required to resolve this appeal involve an agency action. An 'agency action' is defined to mean: '(1) The whole or a part of a rule and regulation or an order; (2) the failure to issue a rule and regulation or an order; or (3) an agency's performance

7

of, or failure to perform, any other duty, function or activity, discretionary or otherwise.' K.S.A. 77-602(b). Ernesti does not attack the validity of or the failure to issue a rule or regulation. While he focuses on an agency order—the certification—he does not attack the process of certifying the [Lawrence Police Department] and its Intoxilyzer 8000 in January 2008 or on the decision that resulted from that application [for certification] process. . . .

"Rather, the issues we resolve in this appeal were not the subject of any administrative proceeding, Hence, we conclude the State's jurisdiction argument fails. [Citation omitted.]" 291 Kan. at 61.

Similar to *Ernesti*, Abel does not challenge any administrative proceeding or agency actions by the KDHE. To do so would require the filing of a petition for judicial review under K.S.A. 77-601 et seq., which was not done here. Instead, Abel is challenging the admissibility of incriminating evidence from the operation of the Intoxilyzer 9000 in a criminal trial. According to Abel, because the KDHE's certification process was flawed, the State failed to establish the requisite foundation for admission of the Intoxilyzer 9000 evidence.

Once again, *Ernesti* provides helpful guidance on the standing issue:

"While we agree that Ernesti would lack standing in an action under the KJRA regarding the device's certification, as a person charged with DUI based on a breath test failure, he has prudential standing to argue that the State cannot lay the necessary foundation to admit the breath test result into evidence in a criminal DUI proceeding." 291 Kan. at 62.

We conclude, like the district court, that under these circumstances Abel has prudential standing to argue that the State failed to lay the necessary foundation to admit the Intoxilyzer 9000 breath test results in evidence.

Preliminarily, as she did in the district court, Abel invites our court to decide whether her motion was to suppress evidence or to limit the admission of evidence at trial. While we ordinarily expect appellants to label their own motions, we agree with Abel's observation:

> "Whether couched in the language of a motion to suppress and the unreasonableness of the obtaining of the breath test or an error in the admission of evidence, the issue to be addressed is whether or not the district court erred in allowing the sample obtained from the [I]ntoxilyzer 9000 to be used by the State in the prosecution of the charge of [DUI]."

Under these circumstances, our standards of review deserve mention. The district court considered Abel's motion as a motion to suppress evidence. In this context, we review the factual underpinnings of the motion by a substantial competent evidence standard and the ultimate legal conclusion by a de novo standard with independent judgment. 291 Kan. at 64. In the case on appeal, our review is de novo, because the facts are undisputed and the issue in question focuses on the district court's legal conclusions. 291 Kan. at 64.

Additionally, like the district court, our analysis is predicated on the interpretation of DUI statutes, evidence statutes, and the interpretation of administrative regulations. Appellate review of a district court's interpretation of statutes and regulations is unlimited. 291 Kan. at 64.

Finally, because our focus is on the district court's ruling that the State properly laid a sufficient foundation for admission of the Intoxilyzer 9000 results, "[t]he question of whether evidentiary foundation requirements have been met is left largely to the

discretion of the district court." 291 Kan. at 64-65. Still, we exercise de novo review of legal conclusions derived from a district court's discretionary decision. 291 Kan. at 65.

At the outset, Abel's claim of error is rather vague. Perhaps the best statement is found in the conclusion of Abel's appellant's brief:

"The court erred in admitting the breath test result from the [I]ntoxilyzer 9000 as the machine did not [appear] on the conforming product list to allow the machine to be submitted to the secretary of the Kansas Department of Health and Environment. Without proper procedure involving certification, the test obtained was *unreasonable* and should not have been admitted." (Emphasis added.)

Abel does not cite any statute, on-point caselaw, or administrative regulation in support of her proposition that KDHE's process of certifying the Intoxilyzer 9000 model produced an "unreasonable" test result in this case because—although thoroughly vetted, authorized, and certified—the Intoxilyzer 9000 was not initially listed on the CPL as required by K.A.R. 28-32-11.

The admissibility of evidence from EBAT devices is specifically governed by Kansas statutory and caselaw. According to our Supreme Court:

"To lay an evidentiary foundation for the admission of a breath test failure in a criminal driving under the influence of alcohol proceeding, the State must, at a minimum, present evidence that there was compliance with K.S.A. 2009 Supp. 8-1002(a)(3). K.S.A. 2009 Supp. 8-1002(a)(3) requires the State to show: (A) The testing equipment used was certified by the Kansas Department of Health and Environment (KDHE); (B) the testing procedures used were in accordance with the requirements set out by the KDHE; and (C) the person who operated the testing equipment was certified by the KDHE." *Ernesti*, 291 Kan. 54, Syl. ¶ 7.

See *State v. Johnson*, 297 Kan. 210, Syl. ¶ 7, 301 P.3d 287 (2013) ("Test results lawfully obtained pursuant to K.S.A. 2007 Supp. 8-1001 are admissible in court as direct evidence of a defendant's blood-alcohol content in . . . criminal prosecutions for driving under the influence.").

Abel does not contest subsections (B) or (C) of K.S.A. 2015 Supp. 8-1002(a)(3). While not mentioning the statute, her sole focus is on the subject matter of subsection (A) relating to whether the Intoxilyzer 9000 that was used to test Abel's breath for alcohol content was certified by the KDHE.

The district court found that the Intoxilyzer 9000 (serial number 90-002070) that was used on May 14, 2016, to test Abel's breath was certified by the KDHE effective January 1, 2016, through December 31, 2016. Abel does not controvert this fact which is supported by substantial competent evidence. Applying *Ernesti*'s precedent interpreting K.S.A. 2015 Supp. 8-1002(a)(3), it is apparent the district court did not err in exercising its judicial discretion to admit the incriminating breath alcohol evidence at trial.

Upon closer examination, Abel's argument that admission of the test results was "unreasonable" is not predicated on the fact that the specific Intoxilyzer 9000 device was not certified, but that the process used by KDHE to certify the model was improper. Still, Abel fails to assert, let alone prove, that the failure to have the Intoxilyzer 9000 listed on the CPL had any adverse effect on the accuracy or reliability of the breath test results admitted at trial.

Abel's argument raises several concerns. First, given a plain reading of K.S.A. 2015 Supp. 8-1002(a)(3), we question whether Abel's argument is proper in the context of the admissibility of EBAT evidentiary testing. A cardinal rule of statutory construction is that appellate courts should first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *State v.*

11

*Ayers*, 309 Kan. 162, 163-64, 432 P.3d 663 (2019). Here, K.S.A. 2015 Supp. 8-1002(a)(3)(A) requires that KDHE certify the EBAT device for test result evidence to be admissible. Using common words and ordinary meanings, it is uncontroverted that the Intoxilyzer 9000 at issue was certified by KDHE.

Another important rule of statutory construction is that appellate courts should refrain from reading something into the statute that is not readily found in its words. *Ayers*, 309 Kan. at 164. By her argument, Abel is adding the word "properly" to K.S.A. 2015 Supp. 8-1002(a)(3)(A) to require that "testing equipment used was [*properly*] certified by the Kansas [D]epartment of [H]ealth and [E]nvironment (KDHE)." (Emphasis added.) If the Legislature intended to predicate the accuracy of EBAT results upon proof of KDHE's compliance with a myriad of administrative regulations which comprise the certification process, the Legislature could have written that language into the statute. However, appellate courts are not empowered to add words to the plain language of Kansas statutes drafted by the Legislature. K.S.A. 2015 Supp. 8-1002(a)(3)(A) relates to the fact of certification by the KDHE, not the process of certification by the KDHE.

Second, Abel cites *Leffel v. Kansas Dept. of Revenue*, 36 Kan. App. 2d 244, 138 P.3d 784 (2006), in support of her argument. Leffel is an appeal from an administrative proceeding wherein Leffel's driver's license was suspended after he failed a preliminary breath test (PBT) on a device that was not approved for use by the KDHE. The KDHE had established a regulation, K.A.R. 28-32-7(a), which listed specific model brands of PBTs for approved use by law enforcement officers in Kansas. The PBT used in Leffel's case was not on the approved KDHE list. As a result, our court disallowed the incriminating results of the PBT as part of the determination of probable cause for arrest: "Because the State in this case failed to offer evidence at the trial court level that the defendant's [PBT] was conducted on a device approved by the [KDHE], the defendant's [PBT] was not admissible evidence." 36 Kan. App. 2d 244, Syl. ¶ 5.

12

In a one-sentence argument, Abel asserts "[t]he use of the [I]ntoxilyzer 9000 without being listed is no different than the requirements that were needed for the admissibility of the [PBT] . . . in [*Leffel*] . . . that if the test device was not approved in the Kansas Administrative Regulations, it was not admissible." We disagree.

On the one hand, the administrative regulation relating to PBTs, K.A.R. 28-32-7(a), listed the brand names of devices the KDHE had approved for use in Kansas. On the other hand, the administrative regulation relating to EBAT devices, K.A.R. 28-32-11, did not list EBAT devices approved for use in Kansas. The regulation simply required that devices submitted for consideration to the KDHE for possible approval as an EBAT device in Kansas should be listed on the CPL. In other words, *Leffel* dealt with a PBT device that was not approved by KDHE, and its testing results were, therefore, not lawfully admissible in evidence. In the case on appeal, the Intoxilyzer 9000 model was approved and certified by the KDHE. The presence or absence of the Intoxilyzer 9000 on the CPL did not signify approval or certification. Only after the Intoxilyzer 9000 was certified for use by the KDHE was its test results admissible in evidence. See K.S.A. 2015 Supp. 8-1002(a)(3); *Ernesti*, 291 Kan. 54, Syl. ¶ 7. *Leffel* is not on point and does not support Abel's legal argument.

Finally, we view K.S.A. 2015 Supp. 8-1002(a)(3) as the Legislature's way of ensuring the accuracy of breath test results admitted in evidence. As detailed in the factual and procedural background section, the district court carefully considered whether the failure to have the Intoxilyzer 9000 listed on the CPL during the initiation of the certification process adversely impacted the accuracy—and admissibility—of the breath test results. In this regard, the district court highlighted the evidence which showed the KDHE fully adhered to "the intent of the regulation to allow only devices meeting NHTSA's compliance to be certified, and NHTSA had indicated it did meet those requirements." The NHTSA letter admitted in evidence confirmed that the Intoxilyzer 9000 model had been evaluated, met NHTSA's specifications for EBAT devices, and

13

would be included on the following CPL published in 2017. In short, assuming the process of certification was relevant to the admissibility of the test results, the district court properly exercised its judicial discretion to find that KDHE's process of certification resulted in accurate and reliable breath alcohol test results regardless of the absence of the Intoxilyzer 9000 model being listed on the CPL.

We conclude there was substantial competent evidence that the State complied with the foundational requirements of K.S.A. 2015 Supp. 8-1002(a)(3) for admission of EBAT device test results. Moreover, we find no reversible error in the district court's legal conclusion that the Intoxilyzer 9000 was certified in compliance with NHTSA standards for EBAT devices and, therefore, Abel's test results were accurate and reliable. In summary, we find no abuse of discretion in the district court's denial of Abel's motion to exclude evidence of the Intoxilyzer 9000 results at trial.

Affirmed.